**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **FOUNDATIONS WORLDWIDE, INC.** | ) | CASE NO. |
| | ) | |
| Plaintiff | ) | JUDGE: |
| | ) | |
| v. | ) | |
| | ) | COMPLAINT FOR |
| | ) | DECLARATORY JUDGMENT |
| **OLIVER & TATE ENTERPRISES, INC.** | ) | OF PATENT |
| | ) | NONINFRINGEMENT AND |
| Defendant | ) | OTHER CAUSES OF ACTION |
| | ) | |
| | ) | |
| | ) | **JURY DEMAND** |
| | ) | **ENDORSED HEREON** |
| | ) | |

Foundations Worldwide, Inc. ("**Foundations**") for its Complaint for Declaratory Judgment of Patent Noninfringement and Other Causes of Action ("**Complaint**") against Oliver & Tate Enterprises, Inc. ("**Oliver & Tate**") states as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1. Foundations is an Ohio corporation, with its principal place of business in Medina, Ohio, in the Northern District of Ohio.

2. Oliver & Tate is a California corporation, which is subject to the personal jurisdiction of the U.S. District Court for the Northern District of Ohio, as it has substantial contacts with the Northern District of Ohio.

3. Oliver & Tate nationally sells covers for small baby cribs commonly known as "play yards."  Oliver & Tate sells its products through retail stores in the Northern District of Ohio and through web sites.  Oliver & Tate has substantial contact with this Judicial District through its sale of its products in this Judicial District.

4. Additionally, the principals of Oliver & Tate travelled to this Judicial District to pursue a business relationship with Foundations.

5. Venue is proper under 28 U.S.C. § 1391(b)(2).  A substantial part of the events giving rise to the claims in this Complaint occurred in this Judicial District.  Oliver & Tate's actions were designed to cause harm to Foundations in this Judicial District.

6. This Complaint seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2001 and 2202.  This Court has subject matter jurisdiction of the claims in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**BACKGROUND**

7. Foundations realleges the allegations of Paragraphs 1 through 6 of this Complaint as if fully rewritten herein.

8. Foundations is the foremost supplier of hotel and childcare cribs in the United States.  For over 10 years Foundations has sold childcare products.  Foundations sold childcare products, including play yards, to Marriott International for years prior to learning of the existence of Oliver & Tate.  Foundations owns numerous patents on childcare products.

9. On or about December 10, 2009, Allison B. Costa and Amy Feldman, principals of Oliver & Tate, met with Foundations at Foundations' office in the Northern District of Ohio. In the meeting they explored a business relationship concerning covers for play yards.

10. Subsequently, Foundations and Oliver & Tate entered into a Mutual Confidentiality Agreement that was retroactive to December 10, 2009 that governed the use of certain "Evaluation Material" that each party provided to the other ("**Mutual Confidentiality Agreement**"). The Mutual Confidentiality Agreement and all obligations thereunder expired on December 9, 2010, and no further agreements were executed between Foundations and Oliver & Tate. Foundations has not used any of the Evaluation Material of Oliver & Tate to further its business or develop its products.

11. A true and exact copy of the Mutual Confidentiality Agreement is attached and incorporated in this Complaint as **Exhibit 1**.

12. Oliver & Tate claim to own U.S. Patent Nos. 7,401,366 ("**`366 patent**") and D572,961 ("**`961 patent**"), hereafter collectively referred to as the "OT patents."

13. A copy of the `366 patent is attached and incorporated in this Complaint as **Exhibit 2**.

14. A copy of the `961 patent is attached and incorporated in this Complaint as **Exhibit 3**.

15. Foundations determined that the OT patents were limited in scope. Both OT patents had issued and were publicly available prior to the time of the December 2009 meeting with Oliver & Tate in Medina, Ohio.

16. Foundations also determined that there are earlier patents concerning play yard covers that put in doubt the ability of Oliver & Tate to market their play yard cover without risk of infringing other entities' patents.

17. Subsequent to the December 2009 meeting between Foundations and Oliver & Tate, some of Foundations' customers began to ask Foundations if play yard covers in the market could be used with Foundations manufactured play yards.

18. Foundations' customers demanded an answer in writing from Foundations. In the spring of 2010, Foundations responded to its customers and indicated that the play yard covers on the market at that time hid the warning labels that were required to be visible on play yards by the ASTM "Standard Consumer Safety Specification for Non-full Size Cribs and Play Yards." The warnings about correct usage are placed on the inside of the top rails on the Foundations play yards. The placement of the warnings allowed the information to be readily available to a guest at a hotel or a caregiver in a childcare facility in order for that individual to be able to determine how to set up the play yard and to use the play yard correctly to prevent injuries. Foundations also expressed concern about possible suffocation risks that a loose fitting cover may present. In addition, the play yard covers on the market had not been fully tested by Foundations. At the same time as notifying its customers about the safety issues, Foundations gave the same information to Oliver & Tate.

19. Foundations did not use or disclose any of the Evaluation Material provided by Oliver & Tate. In fact, Foundations did not begin development of a play yard cover until after the expiration of the Mutual Confidentiality Agreement. Foundations has since developed a play yard cover that is to be used exclusively with Foundations' new model play yard, and not with any other play yard. Foundations designed their play yard cover to maximize safety with many novel features that are the subject of several patent applications.

20. A cease and desist letter dated May 5, 2010 from an attorney representing Oliver & Tate was directed to Foundations in this Judicial District. The letter objected to Foundations' truthful

information sent to customers concerning the safe use of play yards and also falsely alleged disclosure of the Evaluation Material of Oliver & Tate by Foundations.  The attorney for Oliver & Tate threatened a lawsuit for breach of the Mutual Confidentiality Agreement, trade libel, product libel, tortious interference with the economic relationships of Oliver & Tate and other causes of action.

21.     Foundations denied the allegations in the cease and desist letter on May 11, 2010.  Foundations defended its dissemination of truthful information concerning the universe of play yard covers that were available as of that time, and indicated that no Evaluation Material of Oliver & Tate had been disclosed by Foundations.

22.     After sending the May 11, 2010 letter, Foundations believed that any misunderstandings between Foundations and Oliver & Tate had been resolved.  Foundations justifiably relied on the lack of response of Oliver & Tate.

23.     The purchasing entity for Marriott International wanted to work with both Foundations and Oliver & Tate concerning play yards and play yard covers.

24.     In response to that request, Foundations sent a letter on August 9, 2011 suggesting that Oliver & Tate may want to enter into a license agreement with Foundations in which Oliver & Tate would supply fashion designs for play yard covers to Foundations for the benefit of Marriott International.

25.     Foundations and Oliver & Tate have not entered into any license agreement.

26.     Oliver & Tate has represented and is continuing to represent to Foundations' customers that Foundations has infringed the OT patents.

27.     Foundations has received requests from at least one customer for indemnification from claims related to the OT patents.

28. A cease and desist letter dated February 22, 2013 was sent on Oliver & Tate's behalf directed to Foundations in this Judicial District accusing Foundations of infringing the OT patents.

29. On February 28, 2013, Foundations received the letter from an attorney for Oliver & Tate dated February 22, 2013 demanding that Foundations cease and desist from selling Foundations' play yard covers, referring to Foundations' play yard covers in marketing materials, commenting on Oliver & Tate's products, persuading distributors to convince Oliver & Tate to enter into a license agreement with Foundations, and breaching the Mutual Confidentiality Agreement. The letter also demanded a list of everyone that Foundations has corresponded with regarding play yard covers. The letter further wrongfully asserts that Foundations has infringed the OT patents, defamed the quality of Oliver & Tate's products and services, breached the Mutual Confidentiality Agreement, interfered with a prospective economic advantage to Oliver & Tate, misappropriated Oliver & Tate's trade secrets and converted Oliver & Tate's product by claiming it belongs to Foundations.

30. The letter that was sent on behalf of Oliver & Tate and that was received by Foundations on February 28, 2013 promised a lawsuit against Foundations if Foundations did not capitulate to all of the demands of Oliver & Tate. The letter further stated that "Foundations cannot possibly prevail."

31. Foundations denies the assertions in the February 22, 2013 letter.

32. Foundations requested additional time to resolve the dispute between Oliver & Tate and Foundations, however Oliver & Tate has indicated that it is not interested in allowing Foundations a reasonable time to respond.

33. An actual controversy exists between Foundations and Oliver & Tate.

## COUNT 1
## DECLARATORY JUDGMENT OF INVALIDITY, UNENFORCEABILITY, AND NONINFRINGEMENT OF THE '366 PATENT

34. Foundations realleges the allegations of Paragraphs 1 through 33 of this Complaint as if fully rewritten herein.

35. The `366 patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103 and 112.

36. Foundations has not and is not infringing any valid claim of the `366 patent.

37. Foundations asserts any and all other defenses available to it.

38. Oliver & Tate was not harmed by any conduct of Foundations.

39. Foundations is entitled to a declaratory judgment that Foundations has not infringed the `366 patent.

## COUNT 2
## DECLARATORY JUDGMENT OF INVALIDITY, UNENFORCEABILITY, AND NONINFRINGEMENT OF THE '961 PATENT

40. Foundations realleges the allegations of Paragraphs 1 through 39 of this Complaint as if fully rewritten herein.

41. The `961 patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103 and 112.

42. Foundations has not and is not infringing any valid claim of the `961 patent.

43. Foundations asserts any and all other defenses available to it.

44. Oliver & Tate was not harmed by any conduct of Foundations.

45. Foundations is entitled to a declaratory judgment that Foundations has not infringed the `961 patent.

## COUNT 3
## DECLARATORY JUDGMENT OF NO TRADE LIBEL, PRODUCT LIBEL, DEFAMATION OR UNFAIR COMPETITION

46. Foundations realleges the allegations of Paragraphs 1 through 45 of this Complaint as if fully rewritten herein.

47. In the cease and desist letters sent to Foundations in this Judicial District, Oliver & Tate wrongfully asserts that Foundations defamed the quality of Oliver & Tate's products and services by committing trade libel, product libel and/or unfair competition.

48. Foundations has fairly competed with Oliver & Tate.

49. Foundations has not made a derogatory and false statement concerning Oliver & Tate's reputation or the reputation of Oliver & Tate's products and services.

50. Any assertions of Foundations that play yard covers could not be safely used with the prior version of the Foundations' play yard were made out of public concern to prevent injuries to children.

51. Any assertions or depictions in Foundations' materials concerning play yard covers has not specifically mentioned or made implied reference to the play yard covers sold by Oliver & Tate.

52. Any statements made by Foundations concerning play yard covers are truthful.

53. Any claim for alleged defamation, trade libel, product libel and/or unfair competition by Oliver & Tate against Foundations is not actionable because the relevant statute of limitations has expired.

54. Foundations asserts any and all other defenses available to it.

55. Oliver & Tate was not harmed by any conduct of Foundations.

56. Foundations is entitled to a declaratory judgment that Foundations has not committed trade libel, product libel and/or unfair competition and has not defamed Oliver & Tate.

**COUNT 4**
**DECLARATORY JUDGMENT OF NO BREACH OF**
**THE MUTUAL CONFIDENTIALITY AGREEMENT**

57. Foundations realleges the allegations of Paragraphs 1 through 56 of this Complaint as if fully rewritten herein.

58. In the cease and desist letters sent to Foundations in this Judicial District, Oliver & Tate wrongfully alleged that Foundations breached the Mutual Confidentiality Agreement.

59. Foundations has complied with all of the terms of the Mutual Confidentiality Agreement.

60. Foundations has not wrongfully disclosed any of the Evaluation Material of Oliver & Tate.

61. Foundations kept confidential the Evaluation Material of Oliver & Tate.

62. If any information related to Oliver & Tate was disclosed by Foundations, such information is free to be disclosed under the terms of the Mutual Confidentiality Agreement because it was information that was known to Foundations prior to it being furnished by Oliver & Tate, it was generally known to the public other than as a result of a wrongful disclosure, and/or it became available to Foundations from a source other than Oliver & Tate.

63. The Mutual Confidentiality Agreement does not prohibit use of the Evaluation Material.

64. Foundations and Oliver & Tate did not execute a definitive agreement after the date of the Mutual Confidentiality Agreement.

65. By the express terms of the Mutual Confidentiality Agreement, the Mutual Confidentiality Agreement and all obligations related to material disclosed thereunder expired on December 9, 2010.

66. Any claim for alleged breach of the Mutual Confidentiality Agreement by Oliver & Tate against Foundations is not actionable because the relevant statute of limitations has expired.

67. Foundations asserts any and all other defenses available to it.

68. Oliver & Tate was not harmed by any conduct of Foundations.

69. Foundations is entitled to a declaratory judgment that Foundations has not breached the Mutual Confidentiality Agreement.

## COUNT 5
## DECLARATORY JUDGMENT OF NO INTERFERENCE WITH ECONOMIC ADVANTAGE

70. Foundations realleges the allegations of Paragraphs 1 through 69 of this Complaint as if fully rewritten herein.

71. Oliver & Tate has wrongfully asserted that Foundations has interfered with Oliver & Tate's economic advantage.

72. Foundations has not interfered with a prospective economic advantage of Oliver & Tate, nor intentionally interfered with a prospective economic advantage of Oliver & Tate.

73. Foundations has not interfered with the future economic benefit that Oliver & Tate would have received as a result of its work and relationship with customers.

74. Foundations has not interfered with any potential transactions of Oliver & Tate.

75. Any statements of Foundations concerning play yard safety were in response to inquiries by Foundations' customers and were not an interference with the economic advantage of Oliver & Tate.

76. The August 9, 2011 letter suggesting a license agreement between Foundations and Oliver & Tate was written at the insistence of the purchasing entity for Marriott International.

77. If any actions of Foundations are determined to be interference with the economic advantage of Oliver & Tate, the interference was justified and not wrongful in any way.

78. If any actions of Foundations are determined to be interference with the economic advantage of Oliver & Tate, Foundations' actions were not wrongful and Foundations acted in good faith to protect Foundations' own bona fide interests.

79. Foundations has only engaged in fair competition.

80. The only economic relationship at issue in the alleged interference claim of Oliver & Tate against Foundations relates to the competition in the market between Foundations and Oliver & Tate.

81. Foundations did not use any wrongful means or participate in any wrongful activity that interfered with any business relationship of Oliver & Tate.

82. Foundations did not intend to create and did not create an illegal restraint of competition.

83. Foundations' activities have at all times relevant hereto been lawful activities related to Foundations' market competition with Oliver & Tate.

84. At all times relevant hereto, Foundations provided truthful information regarding play yard covers that was requested by its customers.

85. At all times relevant hereto, Foundations provided honest advice related to play yard covers that was requested by its customers.

86. Any claim for alleged interference with economic advantage by Oliver & Tate against Foundations is not actionable because the relevant statute of limitations has expired.

87. Foundations asserts any and all other defenses available to it.

88. Oliver & Tate was not harmed by the conduct of Foundations.

89.     Foundations is entitled to a declaratory judgment that Foundations has not committed interference with the economic advantage of Oliver & Tate.

## COUNT 6
## DECLARATORY JUDGMENT OF NO INTERFERENCE
## WITH DISTRIBUTION AGREEMENT

90.     Foundations realleges the allegations of Paragraphs 1 through 89 of this Complaint as if fully rewritten herein.

91.     The cease and desist letters that Foundations received in this Judicial District wrongfully alleged that Foundations intentionally interfered with the distribution agreements of Oliver & Tate.

92.     Foundations did not interfere with any distribution agreement or other contract to which Oliver & Tate is or was a party.

93.     Upon information and belief, the only contract that Foundations is specifically aware of to which Oliver & Tate was a party is the Mutual Confidentiality Agreement.

94.     Foundations does not specifically know of any distribution agreement of Oliver & Tate.

95.     Foundations has a number of distribution agreements with its customers, including one for the benefit of Marriott International.

96.     Foundations did not interfere with a distribution or other agreement of Oliver & Tate, let alone intentionally interfere with a distribution or other agreement of Oliver & Tate.

97.     If Foundations is found to have interfered with a distribution agreement or other agreement of Oliver & Tate, the interference was justified and was the result of lawful conduct.

98.     Foundations stated safety concerns about play yard covers that were not designed specifically for Foundations' play yards because Foundations' customers demanded that type of statement from Foundations.

99. Foundations stated safety concerns with play yard covers on the market that were not specifically made for a specific play yard, to prevent injury to children.

100. Foundations made statements concerning the safety of play yard covers not specifically designed for a specific play yard, to avoid liability of Foundations for injuries caused by use of a non-approved play yard cover for a Foundations' product.

101. Foundations' written statements concerning the safety of play yard covers did not specifically mention the play yard covers of Oliver & Tate.

102. If it is found that Foundations interfered with a distribution agreement or contract of Oliver & Tate, Foundations' conduct was lawful as Foundations had a good faith right to protect the public and Foundations' own bona fide interests.

103. If Foundations is found to have interfered with a distribution agreement or contract of Oliver & Tate, Foundations' conduct was lawful and was protecting the public interest as well as its reputation and the reputation of its products.

104. Foundations always engaged in fair competition with regard to Oliver & Tate.

105. The only economic relationship at issue in the alleged interference claim of Oliver & Tate against Foundations relates to the competition in the market between Foundations and Oliver & Tate.

106. Foundations did not use any wrongful means or participate in any wrongful activity that interfered with any business relationship of Oliver & Tate.

107. Foundations did not intend to create and did not create an illegal restraint of competition.

108. Foundations' activities at all times relevant hereto have been lawful activities related to Foundations' market competition with Oliver & Tate.

109. At all times relevant hereto, Foundations provided truthful information related to play yard covers that was requested by its customers.

110. At all times relevant hereto, Foundations provided honest advice related to play yard covers that was requested by its customers.

111. Any claim for alleged interference with economic advantage by Oliver & Tate against Foundations is not actionable because the relevant statute of limitations has expired.

112. Foundations asserts any and all other defenses available to it.

113. Oliver & Tate was not harmed by any conduct of Foundations.

114. Foundations is entitled to a declaratory judgment that Foundations has not interfered with any distribution agreements or other contracts of Oliver & Tate.

## COUNT 7
## DECLARATORY JUDGMENT OF NO MISAPPROPRIATION OF TRADE SECRETS

115. Foundations realleges the allegations of Paragraphs 1 through 114 of this Complaint as if fully rewritten herein.

116. The two cease and desist letters that were sent to Foundations in this Judicial District wrongfully allege that Foundations has misappropriated trade secrets of Oliver & Tate.

117. Foundations has not misappropriated any trade secrets of Oliver & Tate.

118. Foundations did not acquire, use or disclose any trade secrets of Oliver & Tate in any unauthorized manner.

119. If Foundations acquired, used or disclosed any alleged trade secrets of Oliver & Tate, the information comprising the alleged "trade secret" of Oliver & Tate does not qualify as such because such information was obtained by Foundations through independent lawful means and/or the information was readily available and public.

120. Any alleged trade secrets of Oliver & Tate did not derive independent economic value from not being generally known.

121. On information and belief, Oliver & Tate did not take reasonable efforts to maintain its information as secret.

122. Oliver & Tate has not identified any information disclosed or used by Foundations that would qualify as a trade secret of Oliver & Tate.

123. Any state or federal statute concerning the protection of trade secrets or the Uniform Trade Secret Act does not apply to claims related to information disclosed pursuant to the Mutual Confidentiality Agreement between Foundations and Oliver & Tate, as the express terms of that Mutual Confidentiality Agreement released the parties from any secrecy obligations with respect to information disclosed thereunder on December 9, 2010.

124. Any alleged cause of action for misappropriation of trade secrets by Oliver & Tate against Foundations is not actionable because the relevant statute of limitations has expired.

125. Foundations asserts any and all other defenses available to it.

126. Oliver & Tate was not harmed by any conduct of Foundations.

127. Foundations is entitled to a declaratory judgment that Foundations has not misappropriated any trade secrets of Oliver & Tate.

## COUNT 8
## DECLARATORY JUDGMENT OF
## NO CONVERSION

128. Foundations realleges the allegations of Paragraphs 1 through 127 of this Complaint as if fully rewritten herein.

129. Oliver & Tate has wrongfully alleged that Foundations has converted Oliver & Tate's product and has claimed that it belongs to Foundations.

130. At no time did Foundations claim that any product of Oliver & Tate belonged to Foundations.

131. Any alleged cause of action for conversion by Oliver & Tate against Foundations is not actionable because any relevant statute of limitations has expired.

132. Foundations asserts any and all other defenses available to it.

133. Oliver & Tate was not harmed by any conduct of Foundations.

134. Foundations is entitled to a declaratory judgment that Foundations did not convert Oliver & Tate's product.

WHEREFORE, Plaintiff, Foundations Worldwide, Inc., prays that this Court enter judgment that:

A. The claims of the `366 patent are invalid;

B. Foundations Worldwide, Inc. has not infringed any valid claims of the `366 patent;

C. The claims of the `961 patent are invalid;

D. Foundations Worldwide, Inc. has not infringed any valid claims of the `961 patent;

E. Foundations Worldwide, Inc. has not committed trade libel, product libel and/or unfair competition and has not defamed Oliver & Tate;

F. Foundations Worldwide, Inc. has not breached the Mutual Confidentiality Agreement;

G. Foundations Worldwide, Inc. has not interfered with the economic advantage of Oliver & Tate Enterprises, Inc.;

H. Foundations Worldwide, Inc. has not interfered with the distributor or other agreements of Oliver & Tate Enterprises, Inc.;

I. Foundations Worldwide, Inc. has not misappropriated any trade secrets of Oliver & Tate Enterprises, Inc.;

J. Foundations Worldwide, Inc. did not convert the product of Oliver & Tate Enterprises, Inc.

K. Foundations Worldwide, Inc. also requests such other and further relief as the Court may deem to be proper and equitable under the circumstances.

A TRIAL BY JURY IS HEREBY DEMANDED.

Respectfully submitted,

　　/s/ Patricia A. Walker　　
Patricia A. Walker　　　Ohio Reg. No. 0001779
Ralph E. Jocke　　　　Ohio Reg. No. 0011642
Christopher L. Parmelee　Ohio Reg. No. 0069532
Attorneys for Plaintiff
Walker & Jocke
231 South Broadway
Medina, Ohio 44256
Phone: 330-721-0000
Fax: 330-722-6446
E-mail: iplaw@walkerandjocke.com