**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FOUNDATIONS WORLDWIDE, INC.** | ) | **CASE NO. 1:13-cv-00506** |
| | ) | |
| **Plaintiff** | ) | **JUDGE CHRISOPHER A. BOYKO** |
| | ) | |
| **v.** | ) | |
| | ) | **PLAINTIFF FOUNDATIONS** |
| | ) | **WORLDWIDE INC.'S** |
| **OLIVER & TATE ENTERPRISES, INC.** | ) | **MEMORANDUM IN OPPOSITION** |
| | ) | **TO DEFENDANT OLIVER &** |
| **Defendant** | ) | **TATE ENTERPRISES, INC.'S** |
| | ) | **MOTION TO DISMISS OR** |
| | ) | **TRANSFER** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................. i

I.      STATEMENT OF ISSUE TO BE DECIDED ............................. 1

II.     SUMMARY OF ARGUMENTS PRESENTED ............................. 1

III.    BACKGROUND ................................................ 2

        A.    Initial Meeting of the Parties ................................. 2

        B.    Safety and Patent Concerns ................................. 3

        C.    Oliver & Tate's Cease and Desist Letter ........................ 4

        D.    Lawsuits Filed ........................................... 6

IV.     DECLARATORY JUDGMENT IS PROPER .............................. 7

V.      VENUE IS PROPER .......................................... 8

VI.     FOUNDATIONS' FIRST FILED ACTION TAKES PRECEDENCE ... 9

        A.    First-to-File Rule Prevails ................................. 9

        B.    Foundations' Actions Were Appropriate ....................... 11

VII.    28 U.S.C. §1404 FACTORS SUPPORT KEEPING ACTION IN OHIO     12

        A.    Relevant Witnesses and Evidence are in Ohio ..................... 13

        B.    Other Practical Considerations Supporting Denying Transfer ...     14

VIII.   CONCLUSION ............................................... 15

<u>**TABLE OF AUTHORITIES**</u>

<u>**FEDERAL STATUTES**</u>

28 U.S.C. §1331 ……………………………………………………...... 1,7
28 U.S.C. §1338 ……………………………………………………...... 1,7
28 U.S.C. §1404 ………………………………………………………… 2, 15
28 U.S.C. §2201 ………………….......…………………………………….. 1, 7
28 U.S.C. §2202 ……………………………………………………….. 1,7

<u>**FEDERAL CASES**</u>

*AmSouth Bank v. Dale*, 386 F. 3d 763 (6th Cir. 2004) ………………………………… 7, 8

*Barber-Green Co. v. Blaw-Knox Co.*, 239 F.2d 774 (6th Cir. 1957) ………………….. 10

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
511 F.3d 535 (7th Cir. 2007) ………………………………………………………... 10

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*,
918 F.2d 1446 (9th Cir. 1990) …………………………………………………… 12

*Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) …..................... 7, 8, 9, 11, 12

*First of Michigan Corp. v. Bramlet*, 141 F.3d 260 (6th Cir. 1998) ………………….. 14

*In re Burley,* 738 F.2d 981 (9th Cir. 1984) …………………………………….............. 10

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ………………………………… 13

*In re Link A Media Devices Corp.* 662 F.3d 1221 (Fed. Cir. 2011) ……………………. 13

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ……….. 12

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118,
127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ……………………………………………….. 7

*Micron Tech, Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) ……………. 9

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ………… 12

*Serco Servs. Co. L.P. v. Kelly Co., Inc.*, 51 F.2d 931 (Fed. Cir. 1993) ……………….. 9

*Smith v. McIver*, 22 U.S. 532, 9 Wheat. 532, 6 L. Ed. 152 (1824) ……………………. 9

*Teledyne Technologies Inc v. Harris Corp.,* No. 11-00139, 2011
U.S. Dist. LEXIS 71370 (C.D. Cal. July 1, 2011) …………………………………..   11, 12

*Xoxide, Inc. v. Ford Motor Company*, 448 F. Supp. 2d 1188
(C.D. Cal. 2006) …………………………………………………………………..   11, 12


**<u>OHIO CASES</u>**

*Codonics, Inc. v. Datcard Sys.*, 2009 U.S. Dist. LEXIS 33920
(N.D. Ohio April 22, 2009) ………………………………………………………   12, 14

*Daimler-Chrysler Corp. v. General Motors, Corp.*,
133 F. Supp.2d 1041, 1045 note 2 (N.D. Ohio 2001) …………………………………   7, 9

*Horton Archery, LLC v. Am. Hunting Innovations, LLC*, 2010
U.S. Dist. LEXIS 6699 (N.D. of Ohio Jan. 27, 2010) …………………………………   10

*Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899 (N.D. Ohio 1999) …………   10


**<u>CALIFORNIA CASES</u>**

*Oliver & Tate Enterprises, Inc. d/b/a Coverplay v. Foundations
Worldwide, Inc., et al.*, Case No. 2:13-cv-01683, (C.D. Cal.) …………………………   1, 10, 13

## I.      STATEMENT OF ISSUE TO BE DECIDED

The only issue to be decided is whether the appropriately filed first action should be adjudicated by this Court.

## II.     SUMMARY OF ARGUMENT PRESENTED

Oliver & Tate Enterprises, Inc. ("Oliver & Tate"[1]) spent 85% of its non-compliant[2] Memorandum arguing that three e-mails that were sent by Foundations Worldwide, Inc. ("Foundations") over the course of two days were so outrageous that this lawsuit should be dismissed or transferred to California.  The e-mails merely requested additional time to respond to Oliver & Tate's vitrolic four page patent infringement cease and desist letter.  Lawlor Decl. ¶¶24 and 28.  Foundations was not given enough time to state its case and develop an amicable solution.  Lawlor Decl. ¶30.

As a result of Oliver & Tate's repeated threats of litigation against Foundations and Foundations' customers, there was a concrete controversy between Foundations and Oliver & Tate.  *Id*. at ¶31.  On March 7, Foundations filed this lawsuit, the least disruptive choice in view of Oliver & Tate's aggressive posturing.  This Court has subject matter jurisdiction over such a declaratory judgment involving an allegation of patent infringement.  28 U.S.C. §§2201 and 2202 and 28 U.S.C. §§1331 and 1338.

Even though Oliver & Tate's California lawyer was informed of the earlier filed Ohio Complaint, Oliver & Tate filed a lawsuit in California late on March 8.  ECF Doc. 10-2 ¶10.  Foundations has requested the California Court to dismiss the lawsuit filed by Oliver & Tate in the U.S. District Court for the Central District of California and a hearing will be held on that Motion on June 10.  *Oliver & Tate Enterprises, Inc. d/b/a Coverplay v. Foundations Worldwide, Inc., et al.*, Case No. 2:13-cv-01683, ECF 21 (C.D. Cal. filed on May 13, 2013).

In its Motion, Foundations urges dismissal of the California lawsuit as the California Court 1) has no personal jurisdiction over the President of Foundations, an Ohio resident who was personally sued in the California lawsuit; 2) is not a proper venue for a lawsuit against the President of Foundations; and 3) is an inconvenient forum.  *Id*.  Foundations also requests

---

[1] Defendant Oliver & Tate Enterprises, Inc. refers to itself as "Coverplay."  Plaintiff Foundations Worldwide, Inc. will use "Oliver & Tate" as it is part of that party's name in the caption and therefore easier to associate with the Defendant.

[2] Oliver & Tate's memorandum by moving party in this unassigned track lawsuit does not comply with Local Rule 7.1(f) as it is 21 pages, but the limit is 20 pages.  The Memorandum further does not contain a brief statement of issues to be decided and a summary of the arguments presented.

transfer of the California lawsuit to Ohio pursuant to 28 U.S.C. §1404.  It is likely that the California Court will soon rule on the Motion to Dismiss.[3]

Oliver & Tate argues that venue is not proper in the Northern District of Ohio.  Oliver & Tate does not argue that they cannot be sued in this Court, but only argues that this lawsuit should not be decided here as Foundations is unreasonable.  Oliver & Tate omits facts that support Ohio's proper venue.  For instance, Oliver & Tate fails to tell the Court that the initial meeting of the parties was instigated by Oliver & Tate and occurred in the Northern District of Ohio.  Lawlor Decl. ¶7.

Finally, the transfer rule of 28 U.S.C. §1404 favors keeping this lawsuit in Ohio.  All of the parties in the California suit may be sued in this Court, but not all of those parties may be sued in California; most of the relevant witnesses and evidence are in Ohio; and the research, design, development and testing of the allegedly infringing products occurred in Ohio.  This Court is requested to keep this case.

III.   **BACKGROUND**

   A.   **Initial Meeting of the Parties**

For over ten years, Foundations has designed, manufactured and sold innovative child care products to the hotel and child care industry.  Foundations, whose offices are in Medina County, Ohio, has been granted numerous patents for its novel child care products.  Lawlor Decl. ¶¶2 and 3.

The relationship between the parties began in December 2009 when Allison B. Costa of Oliver & Tate called Joe Lawlor and asked to meet with him.  *Id.* at ¶7.  Allison Costa and Amy Feldman of Oliver & Tate traveled to the Northern District of Ohio to meet with Foundations.  *Id.*  Oliver & Tate talked about their publicly available patents ("Oliver & Tate patents") and they explored a possible business relationship with Foundations that never resulted in an agreement other than the Mutual Confidentiality Agreement ("Agreement"), which governed the disclosure of their mutual trade secret and confidential information.  ECF Doc. 10-2, Exh. D, p. 45-46.

---

[3] In the California lawsuit, Foundations' first Motion to Dismiss was found to be moot as Oliver & Tate filed an Amended Complaint immediately after Foundations filed the first Motion to Dismiss.  Foundations then filed its Motion to Dismiss the Amended Complaint, which is pending and will be heard by the Court on June 10.

### B.  Safety and Patent Concerns

Foundations immediately had concerns about the Oliver & Tate product and expressed those concerns to Oliver & Tate.  Lawlor Decl. ¶9.  Foundations indicated in a January 29, 2010 e-mail that the Oliver & Tate product had to be made "compliant" and that the product would have to be reviewed from "a safety and compliance standpoint."  ECF Doc. 10-2, Exh. E, p. 47.

Foundations grew even more leery of entering into a license with Oliver & Tate after receiving a February 25, 2010 cease and desist letter that alleged that the Oliver & Tate product infringed a third party's patent.  Lawlor Decl. ¶10.  Foundations began to analyze the narrow Oliver & Tate patents and determined that the patents contained limited inventions.  After the expiration of the Agreement in 2010, Foundations' engineers and design team in Ohio began to invent a novel play yard with a play yard cover.  The Foundations product was not developed using any of Oliver & Tate's trade secrets or confidential information and does not infringe the Oliver &Tate patents.

A few weeks later, some of Foundations' long time customers asked Foundations if play yard covers could be used with Foundations' original play yard.  These customers demanded that Foundations respond in writing, which resulted in the April 2010 letters to Foundations' customers ("Safety Letters").  ECF Doc. No. 10-2, Exh. F, p. 51.  The Safety Letters did not explicitly or implicitly mention the Oliver & Tate play yard cover.  Lawlor Decl. ¶14.  Among other things, the Safety Letters indicated that play yard covers that covered the top rails of the play yard hid the mandatory safety warnings.  If the mandatory warnings were not visible, the safety standard was not met.  Foundations also mentioned that play yard covers that have loose fitting material would present a suffocation risk for a baby.  Due to those safety factors, Foundations asserted that play yard covers on the market at the time of the Safety Letters were not recommended to be used with Foundations' play yard.  There were a number of play yard covers on the market.  *Id.*  Oliver & Tate believes that this innocuous Safety Letter, which does not mention Oliver & Tate, is a baseless attack on Oliver & Tate's products.

The relationship between Foundations and Oliver & Tate deteriorated.  Foundations received a May 5, 2010 cease and desist letter on behalf of Oliver & Tate demanding that Foundations abide by the Agreement, which Foundations believes it has done.  ECF Doc. No.

10-2, p. 76-77.  The letter also complained about the Safety Letters. Foundations appropriately responded to the May 5, 2010 cease and desist letter and believed that the matter was resolved.

In 2011, Marriott Hotels wanted to work with both Oliver & Tate and Foundations concerning play yards and play yard covers.  Lawlor Decl. ¶17.  Marriott Hotels asked Foundations to come up with a way that Oliver & Tate and Foundations could work together for the benefit of the Marriott Hotels.  That resulted in an August 9, 2011 letter from Foundations to Avendra Canada, Inc., an entity that purchases merchandise for Marriott Hotels.  ECF Doc. No. 10-2, p. 80-81.  Nothing happened concerning the possible relationship with Marriott and Oliver & Tate and Foundations, however Oliver & Tate considers the letter to be a wrongful act by Foundations.

### C.    Oliver & Tate's Cease and Desist Letter

On February 28, 2013, Foundations received in the United States mail a cease and desist letter from Oliver & Tate.  ECF Doc. No. 10-2, p. 88-92.  Despite the protests of Oliver & Tate, Foundations did not receive an e-mail version of the cease and desist letter.  Mr. Lawlor has been unable to find that e-mail.  Lawlor Decl. ¶21.  It is not the first e-mail that did not arrive at the inbox of its intended recipient or was somehow lost in the spam filters.

After receiving the cease and desist letter in the mail, Foundations had two and half business days before the arbitrary deadline to respond.  Even if Mr. Lawlor had received and read the cease and desist letter that was allegedly sent by e-mail on February 22, 2013, Foundations would only have had ten full days to respond to the four page patent infringement cease and desist letter.

Oliver & Tate asserts that the following actions of Foundations, three e-mails that Foundations sent to Oliver & Tate's California lawyer in response to the cease and desist letter, were so outrageous that this action must be dismissed.  Those actions are summarized in the chart below:

## Timeline (March 5th to 8th)



The cease and desist letter required Foundations to admit it was wrong and give Oliver & Tate a list of anyone that Foundations had corresponded with concerning play yard covers. Further, Oliver & Tate's lawyers indicated that "Foundations cannot possibly prevail" in any litigation.  ECF Doc. No. 10-2, p. 91.

Foundations first left a voice mail for Oliver & Tate's California attorney in response to the letter.  Lawlor Decl. ¶22.  In that conciliatory vein, Foundations' Compliance Specialist later requested fourteen days to respond to the strident cease and desist letter.  *Id.* at ¶24.  Foundations believed that it was only Oliver & Tate's attorney that was being threatening, and that Foundations could work with Oliver & Tate to resolve the matter.

Foundations decided that a lengthy discussion of Foundations' view of its relationship with Oliver & Tate was warranted.  Lawlor Decl. ¶23.  Foundations believed that revealing the reasons why it does not infringe the Oliver & Tate patents would allow Oliver & Tate to consider Foundations' side of the matter, ending any controversy.  Foundations obtained the correspondence referred to in the cease and desist letter and began to develop an amicable solution that Oliver & Tate might find appealing.  *Id.*

In response to Foundations' reasonable request for fourteen days to respond to a four page cease and desist letter concerning patent infringement, the California attorney for Oliver &

Tate replied, that Foundations had enough time to "consider what your company has done wrong" and "consult legal counsel who will advise you there is no good defense for what has been done".  Lawlor Decl., Exh. 1-A, March 5, 2013, 7:37 p.m. e-mail.  That 7:37 p.m. Tuesday e-mail gave Foundations until noon on Friday, two and half days, to "resolve this amicably."  *Id.*  Oliver & Tate demanded complete capitulation.  The late night e-mail continued, that if this was not resolved, "[w]e will be filing the Complaint in Federal Court on Friday afternoon.  Please act accordingly."  *Id.*

Early the next day, March 6, Foundations' Compliance Specialist wrote that she understood the urgency and asked for only a week, until March 13, to respond to the cease and desist letter as Foundations wanted to come back with something constructive.  Lawlor Decl., Exh. 1-A, March 6, 2013, 8:14 a.m. e-mail.

The attorney for Oliver & Tate responded that afternoon, "[M]y Clients authorized us to draft a Complaint.  They are reviewing it now.  They have instructed me to file it at 12:01 p.m. on Friday unless your company has agreed to stop its tortious behavior before that time."  Lawlor Decl., Exh. 1-A, March 6, 2013, 12:10 p.m. e-mail.  Oliver & Tate's attorney wanted a quick reply or he would publicly announce "all the wrongs that Foundations has committed" in order to damage Foundations' relationships with its customers.  *Id.*  By the end of that business day, Foundations' Compliance Specialist responded that their attorneys would respond by the weekend.  Lawlor Decl., Exh. 1-A, March 6, 2013, 4:43 p.m. e-mail.  She was unaware that the drafting and filing of the Ohio Complaint had been authorized by Foundations.

### D.    Lawsuits Filed

As a result of Oliver & Tate's increasing threats of litigation, and the harassing communications to Foundations' customers, Foundations had a reasonable expectation that Oliver & Tate would eventually carry out its most recent threat to file a lawsuit.  Foundations was forced to choose among complying with unreasonable demands, continuing to do business with persistent threats of litigation against itself or its customers, and seeking a declaratory judgment that would finally resolve the dispute.  Filing the declaratory judgment action in Ohio was the least destructive to Foundations' business.  On March 7, Foundations filed this lawsuit.

Early on March 8, counsel for Foundations called the California Oliver & Tate attorney and explained why Foundations had legitimate, lawful reasons for its actions, and that Foundations did not infringe the OT patents.  As part of that discussion, counsel for Foundations

6

indicated that it had filed suit in Ohio the day before.  Lawlor Decl. ¶33.  Counsel for Oliver & Tate filed the second-filed, substantially similar, lawsuit in the U.S. District Court for the Central District of California late that afternoon, despite knowing that a lawsuit had already been filed in Ohio.

## IV.  DECLARATORY JUDGMENT IS PROPER

Oliver & Tate erroneously asserts that this Court should not decide this declaratory judgment case.  There is no question that this Court has subject matter jurisdiction over a declaratory judgment action involving an allegation of patent infringement. 28 U.S.C. §§ 2201 and 2202 and 28 U.S.C. §§ 1331 and 1338.  Oliver & Tate believes that a declaratory judgment action is a pariah and not a proper means for resolving a dispute.  However, Oliver & Tate has the opportunity to file a counterclaim that asserts all its causes of action against Foundations. This Court would have all of the controversy before it and the declaratory judgment action should proceed to be adjudicated before this Court.

The facts alleged in the present case show that there is a substantial controversy between the parties of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 125-126, 127 S.Ct. 764, 771, 166 L.Ed.2d 604 (2007).  Therefore, an action for declaratory judgment can be a case or controversy under Article III. *Id.*

*AmSouth Bank v. Dale*, which is heavily relied on by Oliver & Tate, is not a Federal Circuit case.  386 F. 3d 763, 785 (6th Cir. 2004).  It is not a patent case; it is an insurance case. Federal Circuit law governs which court will adjudicate a patent dispute. *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005); *Daimler-Chrysler Corp. v. General Motors, Corp.*, 133 F. Supp.2d 1041, 1045 note 2 (N.D. Ohio 2001).

*AmSouth* is also not determinative of whether this Court should adjudicate this lawsuit as *AmSouth* concerns a jurisdictional conflict between a state court and federal District Court, not two equal federal courts.  Oliver & Tate's reliance on this case is also faulty as the Sixth Circuit decided in *AmSouth* that the first Court in which the matter was filed should handle the matter.

Even though *AmSouth* is not the standard for determining where this lawsuit should be decided, Foundations will address the *AmSouth* factors set forth by Oliver & Tate.  The factors in *AmSouth* favor the lawsuit remaining in Ohio.

This Court can settle the entire controversy between Foundations and Oliver & Tate. This declaratory judgment lawsuit includes both the alleged patent infringement and the state court claims.  Oliver & Tate has the opportunity to file a counterclaim in Ohio seeking damages for the alleged patent infringement and state court claims.  This Court would then have the opportunity to settle the controversy by deciding all of the claims between the parties.

All of the claims between Foundations and Oliver & Tate can be decided in Ohio, which would clarify the legal relations between the parties.  Oliver & Tate relies on the fact that it is the "natural plaintiff" in California, however that factor is less favored in patent cases.  This Court may decide the controversy and clarify all the legal issues.

Another *AmSouth* factor is whether there was "procedural fencing."  Oliver & Tate believes there was "procedural fencing," however, Foundations' actions were appropriate.  The sending of three e-mails over a two day period requesting an extension of time to respond to patent infringement allegations is not "procedural fencing."  The Federal Circuit has found that similar actions were appropriate.  *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005).  There was no "procedural fencing."

Keeping this suit in Ohio would not cause friction with a state court.  The *AmSouth* case involved a dispute between a state court and a federal court adjudicating the lawsuit.  In this matter, there is no friction between the state and Federal Courts, as there is no state court involved and the U.S. District Court for the Northern District of Ohio is capable of handling the state court claims.

Oliver & Tate argues that there is an alternative remedy site in California.  However, California is not an alternative remedy site, as California does not have jurisdiction over Mr. Lawlor, and probably does not have jurisdiction over the "Doe" defendants.  Therefore, the only Court that has jurisdiction over all the parties that Oliver & Tate wants to sue is the Northern District of Ohio.  The Federal Circuit law governs, but even if *AmSouth* is relevant, that case supports keeping the matter in Ohio.  *AmSouth Bank v. Dales,* 386 F. 3d 763 (6th Cir. 2004). Foundations respectfully requests this Court to adjudicate this lawsuit to its conclusion.

## V.    VENUE IS PROPER

Oliver & Tate tacitly admits that this Court has personal jurisdiction and that this Court is one of the courts in which venue is proper for this case; they are only arguing that California is a better venue.  Oliver & Tate brags that it markets its products on national television shows and

mentions that Foundations met with them, however, Oliver & Tate omits the fact that the relationship began when Foundations picked up Ms. Costa and Ms. Feldman at the Cleveland airport, bought them dinner at the House of Hunan in Medina, arranged for lodging at the Hampton Inn in Medina County and met with them in Medina County.  Lawlor Decl. ¶7.

Pursuant to 28 U.S.C. §1400(b), the declaratory judgment action concerning the alleged patent infringement was brought where the alleged acts of infringement have occurred.  Oliver & Tate alleges that Foundations is infringing the Oliver & Tate patents by offering Foundations' new play yard cover.  The design and marketing of the new Foundations' play yard cover has all occurred from Medina County, Ohio.  *Id.* at ¶4.  The only argument Oliver & Tate has concerning improper venue is that Foundations is being unreasonable.  That is not a legitimate reason for finding that this lawsuit was brought in an improper venue as will be shown later in this Memorandum.

## VI.    FOUNDATIONS' FIRST FILED ACTION TAKES PRECEDENCE

Foundations seeks a declaratory judgment that the Oliver & Tate patents are invalid, unenforceable, and not infringed, and a judgment in favor of Foundations on several state claims that were mentioned in the February 22 Oliver & Tate cease and desist letter.  On March 8, with full knowledge of the pending action in Ohio, Oliver & Tate filed suit in California asserting substantially similar claims.  The April 25 First Amended Complaint in this Court closely tracks the state law claims in the California lawsuit.

The Federal Circuit has "held that the first to file rule will be applied more rigorously in patent cases." *Daimler-Chrysler Corp. v. General Motors, Corp.*, 133 F. Supp.2d 1041, 1045 note 2 (N.D. Ohio 2001); *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d at1345-46 (holding that focusing on the anticipatory nature of a lawsuit was an abuse of discretion); *see also Serco Servs. Co. L.P. v. Kelly Co., Inc.*, 51 F.2d 931, 937 (Fed. Cir. 1993) (subsequent history omitted).

### A.    First-to-File Rule Prevails

The first-to-file rule establishes that a complaint involving the same parties and the same issues should be heard in the court where it is first filed.  *Id.  See also Micron Tech, Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) ("The general rule favors the forum of the first-filed action."); *See Smith v. McIver*, 22 U.S. 532, 535, 9 Wheat. 532, 6 L. Ed. 152 (1824) ("In all cases of concurrent jurisdiction, the Court which first has possession of the

subject must decide it."). The first-to-file rule is applicable here. It is undisputed that Foundations filed the first Complaint and that the first-filed Complaint was in this Court.

The Ohio and California Complaints involve nearly identical issues. Foundations' Complaint seeks a declaratory judgment that it has not infringed any valid claim of the Oliver & Tate patents, and that those patents are invalid or unenforceable, while Oliver & Tate's California Complaint alleges infringement of the same patents. ECF Doc. 9; *Oliver & Tate Enterprises, Inc. d/b/a Coverplay v. Foundations Worldwide, Inc., et al,* Case No. 2:13-cv-01683, ECF 19 (C.D. Cal. filed on April 16, 2013). Further, Foundations' Complaint seeks a declaratory judgment that Foundations has not engaged in a number of state torts, while Oliver & Tate has requested that this Court find that Foundations and, in some instances Mr. Lawlor and the Does, have committed the same torts against it. *Id.* Many of the tort state claims are concealed patent infringement claims. *Id.*

Similarly, the two Complaints involve the same primary parties: Foundations and Oliver & Tate. Oliver & Tate's California Complaint also names Mr. Lawlor and five unnamed Does, as defendants. *Oliver & Tate v. Foundations*, Case No. 2:13-cv-01683, ECF 19. It is significant that the California Court does not have personal jurisdiction over Mr. Lawlor or the Does. *Oliver & Tate v. Foundations*, Case No. 2:13-cv-01683, ECF 21. Mr. Lawlor and the unnamed "Doe" defendants are likely subject to personal jurisdiction in Ohio, but not in California.

"The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Horton Archery, LLC v. Am. Hunting Innovations, LLC,* 2010 U.S. Dist. LEXIS 6699, *7 (N.D. of Ohio Jan. 27, 2010). *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (7th Cir. 2007) (internal quotations and citations omitted). *See also Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999) (citing *In re Burley,* 738 F.2d 981, 988 (9th Cir. 1984) and *Barber-Green Co. v. Blaw-Knox Co.*, 239 F.2d 774, 778 (6th Cir. 1957)) (holding pursuant to the first-to-file rule, when suits involving substantially the same issues and parties are filed in courts of concurrent jurisdiction, the court in which the first action was filed should proceed to judgment).

Foundations requests that this Court retain this first-filed action.

### B.    Foundations' Actions Were Appropriate

Oliver & Tate alleges that the first-to-file rule should be ignored because Foundations was unreasonable in sending the three e-mails over the course of two days in response to Oliver & Tate's nasty cease and desist letter.  The case law does not support Oliver & Tate's argument.

In *Electronics for Imaging, Inc. v. Coyle*, the patentee gave an ultimatum on December 5 that "December 15 was the deadline" to resolve the dispute without litigation.  394 F.3d 1341, 1344 (Fed. Cir. 2005).  The alleged infringer filed a declaratory judgment action on December 11 and the Federal Circuit found nothing "unjust or inefficient" to prevent application of the first-filed rule.  *Id*. at 1348.  Similarly, in this lawsuit Oliver & Tate gave an ultimatum on March 5 that March 8 was the deadline to resolve the dispute without litigation, and Foundations filed for declaratory judgment on March 7.  The Federal Circuit holding in *Coyle* supports keeping this lawsuit in this Court.

Oliver & Tate argues that the *Xoxide* case mandates the dismissal of this Ohio action due to Foundations' allegedly unreasonable actions, however, the parties in *Xoxide* were engaged in ongoing negotiations over a period of months, after which one of the parties filed for declaratory judgment.  *Xoxide, Inc. v. Ford Motor Company*, 448 F. Supp. 2d 1188, 1194 (C.D. Cal. 2006).  Here, there were no negotiations before the declaratory judgment filing, only Oliver & Tate's unreasonable demands.  *Xoxide* is not similar to this lawsuit.

In the California lawsuit, Oliver & Tate cited the *Teledyne* case in support of their position.  *Teledyne Technologies Inc v. Harris Corp.,* No. 11-00139, 2011 U.S. Dist. LEXIS 71370 (C.D. Cal. July 1, 2011).  That case is distinguishable from the present lawsuit, as the second-filed court had already issued claim construction rulings in a recently concluded case for three of the four patents at issue.  *Id.* at *5.  Judicial economy created by having a forum familiar with the patents-in-suit handle a patent suit, and not the alleged anticipatory conduct of the first-to-file plaintiff, was the main reason the *Teledyne* Court declined to follow the first-to-file rule in that case.  *Id.* at *5-*9 (noting that "the anticipatory nature of Teledyne's suit is but one fact in the dismissal analysis.").  There are no similar facts favoring judicial economy in California over the first-filed action in Ohio.

Moreover, Foundations' conduct more closely tracks the facts of *Coyle* than of *Teledyne*.  The parties in *Teledyne* had already engaged in extensive negotiations, including a face-to-face meeting and multiple deadline extensions, over a period of several months.  *Id*., 2011 U.S. Dist.

11

LEXIS 71370, at *2-*4. Teledyne then suddenly filed a declaratory judgment. *Id. but see SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007) (finding declaratory judgment jurisdiction appropriate under similar circumstances).

In both *Teledyne* and *Xoxide*, the declaratory judgment plaintiff had filed suit in the middle of substantive negotiations that had been ongoing for several months. There were no substantive ongoing negotiations here because Oliver & Tate made no good faith attempt to resolve the matter. It was a complete concession to Oliver & Tate's demands, or litigation.

After Oliver & Tate refused to grant more than a few days for Foundations to consider its options, Foundations resigned itself to the apparent inevitability of litigation. It was not bad faith for Foundations to seek additional time to negotiate a better solution. *See, e.g., Coyle*, 394 F.3d at 1346. Nor was it bad faith for Foundations to have filed for declaratory relief in Ohio instead of giving in to Oliver & Tate's insistence that Foundations immediately capitulate to Oliver & Tate's demands. With only limited time to act, and faced with a patentee who preferred saber-rattling over deliberate discussion, Foundations chose a declaratory judgment action in Ohio as the option least disruptive to its business.

But even assuming that Oliver & Tate could show that Foundations' Ohio action was an improper anticipatory filing, which it was not, it would be an abuse of discretion not to adjudicate this lawsuit in Ohio. *Coyle*, 394 F.3d at 1347-48. Oliver & Tate still must establish that other factors weigh in its favor, which they have failed to do.

## VII.   28 U.S.C. §1404 FACTORS SUPPORT KEEPING ACTION IN OHIO

In determining whether to grant a request to transfer pursuant to the doctrine of *forum non conveniens*, the court should review the factors including: (1) the relative ease of access to sources of proof; (2) the residence of relevant witnesses; (3) the availability of compulsory process for attendance of witnesses; and (4) access to physical evidence and other sources of proof. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir. 1990); *Codonics, Inc. v. Datcard Sys.*, 2009 U.S. Dist. LEXIS 33920, *11 (N.D. Ohio April 22, 2009).

The sources of proof and access to the physical evidence are mostly in Ohio as the allegedly infringing product was conceived, designed and is being marketed from Ohio. Lawlor Decl. ¶3-6. More than three independent consultants, who were involved with the design and

12

marketing of the allegedly infringing product, reside in the Northern District of Ohio.  Lawlor Decl. ¶15.  Those witnesses can only be compelled to testify in this Court, not in California.

### A.     Relevant Witnesses and Evidence are in Ohio

In patent infringement matters, the bulk of the evidence is located where the party accused of infringement normally keeps documents, equipment, and other relevant evidence. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *In re Link A Media Devices Corp.* 662 F.3d 1221, 1224 (Fed. Cir. 2011).  That place is Ohio, not California.  Lawlor Decl. ¶3.

Several non-party witnesses are neither employees of Foundations, nor subject to subpoena in California.  These non-party witnesses include persons at David E. Campbell & Associates, ColorDirections LLC, and James Kurtz Graphic Design Co. (independent contractors who worked on the development and design of Foundations' play yard cover and who all reside in the Northern District of Ohio) and Mark Suvak, the author of two of the letters attached to Oliver & Tate's Complaint, who is no longer an employee of Foundations. *Oliver & Tate Enterprises, Inc. d/b/a Coverplay v. Foundations Worldwide, Inc., et al*, Case No. 2:13-cv-01683, ECF 19 (C.D. Cal. filed on April 16, 2013).

Oliver & Tate suggests that Foundations' customers are California witnesses, but Oliver & Tate has not explained why such collateral witnesses would be relevant.  It appears that Oliver & Tate identified Foundations' California customers in order to present the false illusion of numerous third party witnesses in California.  Lawlor Decl. ¶44.  Furthermore, Oliver & Tate has not indicated whether the California witnesses reside in the Central District of California, the Court of the California Complaint.

Oliver & Tate indicates that there are eleven companies that are Foundations' customers and are "based in California or have representatives in California."  ECF Doc. 10-3, Costa Decl. ¶11.  However, that is not the same as being relevant witnesses in this action.  For instance, Hilton Worldwide has facilities in California, however, Foundations usually deals with people in the McLean, Virginia office.  Lawlor Decl. ¶36.  As a further example, Foundations has discussed its play yard cover product with Disney in Florida, not California.  Lawlor Decl. ¶38.

Foundations' normal interactions with its customers Kaplan, Hertz, Buy Buy Baby, Constructive Play Things, Grainger, American Hotel Register, Hilton, Disney, and Guest Supply would have occurred <u>outside</u> of California.  Lawlor Decl. ¶36-39.  Oliver & Tate is only listing

13

these companies to make it look like everyone is in California.  For instance, the Guest Supply representative mentioned by Oliver & Tate is located in Ohio, not California.   Lawlor Decl. ¶39.

The paper and physical evidence is in Ohio and more than three independent witnesses closely tied to the allegedly infringing product are in Ohio, who can only be compelled to come to Court in the Northern District of Ohio. Those factors support keeping this lawsuit in Ohio.

### B.        Other Practical Considerations Support Denying Transfer

The alleged infringement arose in the Northern District of Ohio and weighs in favor of keeping the suit in Ohio.  The location of the accused activities weighs in favor of keeping the suit in Ohio.  The allegedly infringing activity occurred in Ohio.  As previously stated, Foundations' research, design, development and testing of the allegedly infringing products occurred at Foundations' facilities in Ohio.  Lawlor Decl. ¶4.  Foundations is located in Ohio, where decisions are and have been made regarding the research, design, development, testing, marketing and sales of the allegedly infringing Foundations play yard covers.

Ohio has a substantial connection to this lawsuit.  "In deciding whether a plaintiff's chosen venue is appropriate under §1391(b), district courts must decide whether the district has a 'substantial connection'." *Codonics, Inc. v. Datcard Sys.*, 2009 U.S. Dist. LEXIS 33920, *8 (N.D. Ohio April 22, 2009).  *See First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998).  "The district court, however, need not compare the connection of its district to the connection of other districts or decide what district has the most substantial connection." *Id. See Bramlet* at 264.

Finally, the Northern District of Ohio is the only federal district in which all claims that are currently the subject of both Amended Complaints can be resolved, and jurisdiction obtained over all parties.  The factors to be evaluated in determining whether to grant a request to transfer venue pursuant to 28 U.S.C. §1404(a) all weigh heavily toward the Northern District of Ohio.

The key dispute between Foundations and Oliver & Tate is Oliver & Tate's allegation that Foundations has allegedly infringed the inventions in the Oliver & Tate patents.  In order to prove patent infringement, it must be shown how the alleged infringer's products include all the elements of a claim in a patent, and if that is proven, what damages were incurred.  Evidence to prove those elements are all in Ohio.

Further, the California Court does not have jurisdiction over Mr. Lawlor, nor does it likely have jurisdiction over the five Doe defendants that were named in the California suit.  All

of the parties may be sued in Ohio, but not California.  Therefore the 28 U.S.C. §1404 factors favor this lawsuit being adjudicated in Ohio.

## VIII.  <u>CONCLUSION</u>

Oliver & Tate wrongfully tries to paint Foundations as a monster in order to overcome the first-to-file rule, but fails.  The declaratory judgment action is proper in this Court and so is venue.  The *forum non conveniens* factors further support the lawsuit remaining in this Court. Foundations respectfully requests this Court to deny the Motion to Dismiss or Transfer and to adjudicate this lawsuit.

Respectfully submitted,

___/s/ Patricia A. Walker_____

| | |
|---|---|
| Patricia A. Walker | Ohio Reg.  No. 0001779 |
| Ralph E.  Jocke | Ohio Reg.  No. 0011642 |
| Christopher L. Parmelee | Ohio Reg. No. 0069532 |

Attorneys for Plaintiff
Walker & Jocke
231 South Broadway
Medina, Ohio  44256
Phone: 330-721-0000
Fax: 330-722-6446
E-mail: iplaw@walkerandjocke.com

### <u>CERTIFICATE OF COMPLIANCE</u>

This lawsuit has not yet been assigned to a track.  Plaintiff Foundations has considered this a response to a dispositive motion and has complied with the requirements of Local Rule 7.1.

___/s/ Patricia A. Walker_____
Patricia A. Walker

**<u>CERTIFICATE OF SERVCE</u>**

  I certify that on the 4th day of June, 2013, I electronically filed the foregoing document with the Clerk of Courts, using the CM/ECF System, which will automatically send e-mail notification of such filing to all counsel who have entered an appearance in this action.


          ____/s/ Patricia A. Walker_____

          Patricia A. Walker

**HORTON ARCHERY, LLC Plaintiff,**

**v.**

**AMERICAN HUNTING INNOVATIONS, LLC, et al., Defendants.**

**No. 5:09CV1604.**

**United States District Court, N.D. Ohio, Eastern Division.**

**January 27, 2010**

### MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.

This memorandum opinion and order arises out of the motion of Defendants American Hunting Innovations, LLC, also known as Kempf Crossbows, also known as RDT Archery ("American Hunting"), J & S R.D.T. Archery, Inc. ("J&S"), Scorpyd Crossbows ("Scorpyd"), and James J. Kempf ("Kempf") (collectively, "Defendants") to dismiss, or alternatively, to transfer, the complaint of Plaintiff Horton Archery, LLC ("Horton Archery"). (Doc. No. 14.) For the following reasons, Defendants' motion to dismiss is GRANTED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Except where noted, the following facts are undisputed and are taken from Plaintiff's complaint. Plaintiff Horton Archery is a Delaware LLC with its principal place of business in Tallmadge, Ohio. Defendant American Hunting is an Iowa LLC with its principal place of business in Coralville, Iowa. Defendant J&S is an Iowa corporation with its principal place of business in Coralville, Iowa. Defendant Scorpyd is a trademark for a line of crossbow products made and sold by American Hunting. Defendant Kempf is an Iowa resident, and the majority owner and CEO of both American Hunting and J&S.

On January 5, 2005, Kempf filed an application for a patent covering "a crossbow having an increased powerstroke and reduced noise" which is facilitated in part by "locating string guides at least partially forward and rearward of the ends of the limbs." (Doc. No. 1-1 at p.1.) Between March 2006 and April 2007, Defendants and non-party Horton Manufacturing Company, LLC ("Horton Manufacturing") engaged in negotiations, ultimately unsuccessful, concerning Horton Manufacturing's interest in licensing the crossbow technology covered by the 921 patent. (Doc. No. 14 at p. 8.) On April 29, 2008, United States Patent No.

7,363,921 (the "921 patent") was issued to Kempf. (Doc. No. 1-1 at p.1.) In August 2008, Kempf purchased, from two different sources, crossbows manufactured by Horton Manufacturing that he suspected incorporated technology covered by the patent. (Doc. No. 14 at pp. 8-9.)

In early 2009, Horton Manufacturing entered into receivership. (Doc. No. 15-6, *Comerica Bank v. Horton Mfg. Co., LLC, fka Horton Acquisition LLC,* Case No. CV-2009-022, Monroe County (Ohio) Court of Common Pleas (January 30, 2009). On April 29, 2009, Defendants filed a lawsuit against Horton Manufacturing in the Southern District of Iowa, Case No. 4:09-CV-166 ("the Iowa litigation"), alleging, among other things (and relevant here), infringement of the '921 patent. (Iowa litigation, Doc. No. 1.) On May 14, 2009, Defendants filed a first amended complaint in the Iowa litigation. (Iowa litigation, Doc. No. 3.) On June 12, 2009, while under the supervision of the Monroe County court, a sale of substantially all of Horton Manufacturing's assets to WildComm-Horton Partners, LLC, nka Horton Archery, was approved.[1] (Doc. No. 15 at p. 3.)

On July 14, 2009, Horton Archery, at that date not a party to the Iowa litigation, filed a complaint in this Court seeking declaratory relief relating to non-infringement and invalidity of the '921 patent, the enjoinment of Defendants from initiating or threatening patent infringement litigation against Horton Archery, and the enjoinment of Defendants from publishing false or misleading descriptions or representations of fact regarding either Defendants' own, or Horton Archery's, products (the "Ohio litigation"). (Doc. No. 1.) On August 31, Defendants filed a motion for leave to file a second amended complaint naming Horton Archery as a defendant in the Iowa litigation. (Iowa litigation, Doc. No. 7.) On that same day, in this Court, Defendants filed the motion dismiss before the Court. (Doc. No. 14.) On September 1, 2009, the Iowa court granted Defendants' motion for leave to file a second amended complaint, and the second amended complaint was filed on September 4. (Iowa litigation, Doc. Nos. 8, 9.) On September 14, Horton Archery filed an opposition to Defendants' motion to dismiss this action. (Doc. No. 15.) Defendants filed a reply on September 28. (Doc. No. 17.) Horton Archery thereafter filed a motion for leave to file a sur-reply (Doc. No. 17), which Defendants opposed via a motion to strike.[2] (Doc. No. 18.)

Against this backdrop, Defendants' motion to dismiss is ripe for decision.

### II. DISCUSSION

Defendants advance two arguments in support of their motion dismiss. First, Defendants argue that Horton Archery's complaint should be dismissed under the first-to-file rule. Alternatively, Defendants argue that this

Court should decline to entertain Horton Archery's complaint under the Declaratory Judgment Act. Because this Court concludes that Horton Archery's complaint should be dismissed under the first-to-file rule, there is no need to address Defendants' second theory.

A. The First-to-File Rule

The first-to-file rule embodies the well-established principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. M'Iver,* 22 U.S. 532, 535 (1824). Underlying this principle is the desire to "encourage[] comity among federal courts of equal rank." *AmSouth Bank v. Dale,* 386 F.3d 763, 791 n.8 (6th Cir. 2004) (quoting *Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc.,* 16 F. App'x 433, 437 (6th Cir. 2001)). The Fifth Circuit has explained the rationale behind the first-to-file rule, stating, "[c]ourts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 604 (5th Cir. 1999).

"Under the principle of comity, a district court properly may dismiss a case because of a previously filed case pending before another district court that presents the same issues and involves the same parties." *Carter v. Bank One,* 179 Fed. App'x. 338, 340 (6th Cir. 2006) (citations omitted). After deciding that the first-to-file rule applies, disposition of the second-filed action is within the court's discretion. *Smith v. Sec. Exch. Comm'n,* 129 F.3d 356, 361 (6th Cir. 1997). Courts may dispense with the rule for equitable reasons or when special circumstances are present, including bad faith, anticipatory suits, forum shopping or significant policy considerations. *Nartron Corp. v. Quantum Research Group, Ltd.,* 473 F.Supp.2d 790, 795 (E.D. Mich. 2007).

The first-to-file rule does not require that the issues and parties in the two actions be identical. Indeed, the "rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 551 (6th Cir. 2007) (internal quotations and citations omitted). *See also Plating Resources, Inc. v. UTI Corp.,* 47 F.Supp.2d 899, 903 (N.D. Ohio 1999) (citing *In re Burley,* 738 F.2d 981, 988 (9th Cir. 1984) and *Barber-Greene Co. v. Blaw-Knox Co.,* 239 F.2d 774, 778 (6th Cir.1957)) (holding pursuant to the first-to-file rule, when suits involving substantially the same issues and parties are filed in courts of concurrent jurisdiction, the court in which the first action was filed should proceed to judgment).

1. Which Lawsuit is the First-Filed Action?

Before analyzing whether or not application of the first-to-file rule is appropriate in this case, the Court must determine which of the Iowa action or this Ohio action was first-filed. As stated earlier, the Iowa litigation was filed by Defendants on April 29, 2009, but Horton Archery was not named as a defendant in that action until the second amended complaint was filed, on September 4. Horton Archery filed this lawsuit on July 14, 2009. Thus, the following threshold question must be answered: for the purposes of the first-to-file rule, does an amended complaint that names a new party relate back to the original filing date?

This case involves patent infringement, and the Federal Circuit Court of Appeals has exclusive jurisdiction of final decisions in patent infringement cases. 28 U.S.C. § 1295. Therefore, to answer the threshold question posed above, this Court must determine whether to apply the law of the Sixth Circuit or the Federal Circuit. The Federal Circuit applies the procedural law of the regional circuit in matters that are not unique to patent law. *Allen Organ* Co. v. Kimball Int'l, Inc., 839 F.2d 1556, 1563, (Fed. Cir. 1988). However, the Federal Circuit has also held that the

question of whether a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits.

*Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993). In *Genentech,* the Federal Circuit rejected the application of the rigid rule of *Tempco Electric Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746 (7th Cir. 1987), which held that an action for declaration of noninfringement of a trademark should give way to a later-filed suit for trademark infringement, to patent cases. *Genentech,* 998 F.2d at 937. Citing a need to ensure national uniformity in patent practice, the Federal Circuit instead adopted "the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Id.*

The rule from *Genentech,* however, does not directly address the inquiry as to whether Federal Circuit law applies to the threshold question presented in this case. It is true that the question of whether an amended complaint that adds a party relates back to the date of the original complaint filing for the purposes of the first-to-file rule is certainly not unique to patent law, but is rather a procedural question of general applicability. However, the primary lesson from *Genentech* is that the Federal Circuit should apply, or create, if necessary, its own body of law when necessary "to avoid creating opportunities for *dispositive differences* among the

regional circuits." *Genentech,* 998 F.2d at 937 (emphasis added). The question posed in this case is dispositive: if the law of the Sixth Circuit dictates that an amended complaint does not relate back to its original filing date, no further first-to-file analysis would be necessary, because Defendants would no longer be able to claim first-to-file status, at least in this Court. What could potentially result, however, is the Iowa court, which must apply the law of the Eighth Circuit, holding otherwise. The potential resulting situation, with two simultaneous lawsuits trying similar issues in different districts, is untenable and is exactly the situation the first-to-file rule seeks to avoid. Therefore, this Court finds the threshold question posed by this case implicates the Federal Circuit's "mandate to promote national uniformity in patent practice" and this Court shall look to Federal Circuit law to answer it.

This Court has been unable to locate any Federal Circuit precedent directly answering the threshold question, nor has either of the parties provided such authority. Indeed, the "Federal Circuit has not expressly stated a view as to whether, in patent cases, the first-to-file rule applies only where the concurrent actions at issue involve identical parties." *Shire U.S., Inc. v. Johnson Matthey, Inc.,* 543 F.Supp.2d 404, 408 (E.D. Pa. 2008). Thus, "when deciding patent matters based upon particular aspects of the first-to-file rule on which the Federal Circuit has been silent, district courts look to understandings of the doctrine as developed generally in the federal courts." *Id.*

In *Shire,* the court was confronted with a nearly identical scenario to the one presented here. There, a patent holder sued a manufacturer for patent infringement in the Eastern District of Texas. A short time later, a non-party to the Texas action instituted an action for declaratory relief related to the same patent against the patent holder in Pennsylvania. Subsequently, the patent holder amended its complaint to include the non-party in the Texas action, and filed a motion to dismiss the Pennsylvania declaratory relief lawsuit. The court in *Shire* held "the timing of the addition of Shire [the former non-party] as a party to the Texas suit is not material to the determination of which action was first-filed [because] the substantive touchstone of the first-to-file inquiry is *subject matter." Id.* at 409 (emphasis added). And therefore, the court held that the Texas action was first in time and, after determining that no exceptions to the first-to-file rule applied, dismissed the Pennsylvania declaratory judgment lawsuit.

*Shire* is not an outlier case. Indeed, the principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it" is well-established, and by no means new. *Smith v. M'Iver,* 22 U.S. (9 Wheat.) 532, 535 (1824). A review of more recent decisions reveals that the critical inquiry for first-to-file purposes is which court "first obtains possession of the subject of the dispute, not the parties of

the dispute." *Advanta Corp. v. Visa U.S.A., Inc.,* No. 96-7940, 1997 U.S. Dist. LEXIS 2007, at *3 (E.D. Pa. Feb. 19, 1997). *See also Whelan v. United Pac. Indus.,* No. 02-2519, 2002 U.S. Dist. LEXIS 21827, at *2 (E.D. Pa. Nov. 1, 2002) (holding that "although plaintiffs argue that the California complaint failed to name the patent owners as parties to the declaratory judgment action, such an easily correctable oversight does not prevent this Court from deferring to the first-filed suit"); *Barber-Greene Co. v. Glaw-Knox Co.,* 239 F.2d 774, 778 (6th Cir. 1957) ("When two suits have substantially the same purpose and the jurisdiction of the courts is concurrent, that one whose jurisdiction and process are first invoked by the filing of the bill is treated [...] as authorized to proceed with the cause.'") (quoting *Penn Gen. Cas. Co. v. Commonwealth of Pa.,* 294 U.S. 189, 196 (1935)); *National Foam, Inc. v. Williams Fire & Hazard Control, Inc.,* No. 97-3105, 1997 U.S. Dist. LEXIS 16734, *1-2 (E.D. Pa. Oct. 29, 1997) (applying first-to-file rule even though defendant not named in initial complaint because the defendant "should have known that but for a mistake concerning the identity of the proper party, the initial complaint would have been brought against it").

Examining the complaint in this case and the original and the second amended complaint in the Iowa litigation, it is readily apparent that the subject matter of the two lawsuits is identical. In this Court, Horton Archery seeks a declaration that it does not infringe the '921 patent, or alternatively that the '921 patent is invalid. This exact issue is before the Iowa court, where the plaintiff's (Defendants here) first cause of action alleges infringement of the '921 patent by Horton Archery. Horton Archery readily acknowledges this reality, but argues that the declaratory judgment action before this Court is the first-filed action because Horton Archery was not named as a defendant in the Iowa litigation until after the Ohio litigation was filed, and alternatively because the second amended complaint in the Iowa litigation "alleg[es] so little against Horton Archery" and the second amended complaint "demonstrates both that (1) [Defendants] regard[] Horton Archery as a distinct business entity from Horton Manufacturing, and that (2) [Defendants] understand[] that different facts must be presented to support the contentions against Horton Manufacturing than the contentions against Horton Archery." (Doc. No. 15 at p.7.) These arguments are without merit, and irrelevant, respectively. As discussed in the preceding paragraphs, it is the court which first has possession of the *subject matter* of the lawsuits that is the first-filed court. And even assuming *arguendo* that Horton Archery's contentions regarding the distinctness of it and Horton Manufacturing and that "different facts" are necessary to support the allegations against the two entities, whether or not the '921 patent has been infringed, or is invalid, is the touchstone subject matter of both of these lawsuits. And the Iowa court certainly and without question was the first court to have possession of that

issue. Therefore, the Iowa litigation was first-filed.

2. Exceptions to the First-to-File Rule

Having determined that the Iowa litigation was first-filed and involves the identical parties presently before this Court, and that the issues before the two courts involve the identical primary issue of the '921 patent, the Court next must determine whether it should exercise its discretion to dispense with the rule for equitable reasons or because special circumstances warranting an exception are present. The Federal Circuit has recognized two exceptions to the first-to-file rule, the customer-suit exception and a discretionary determination based on the convenience and suitability of competing forums. *See Tegic Comm'ns. Corp. v. Bd. of Regents,* 458 F.3d 1335, 1343 (Fed. Cir. 2006) (discussing customer-suit exception); *Micron Tech., Inc. v. Mosaid Techs., Inc.,* 518 F.3d 897, 905 (Fed. Cir. 2008) ("The trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums [...] when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under § 1404(a).").

a) The Customer-Suit Exception

Under the customer-suit exception, a later-filed manufacturer declaratory suit takes priority over earlier-filed infringement suits against the manufacturer's customers. This exception plainly does not apply to this case. "At the root of the preference for a manufacturer's declaratory judgment is the recognition that, in reality, the manufacturer is the true defendant in the suit." *Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 737-38 (1st Cir. 1977)). The Iowa suit, as amended and it exists now, includes the "true defendant," Horton Archery. Moreover, the relationship between Horton Manufacturing, the original named defendant in the Iowa litigation, and Horton Archery is not the type of manufacturer-customer relationship that the customer-suit exception is designed to protect.

b) Convenience and Suitability of Competing Forums

"The general rule favors the forum of the first-filed action, whether or not it is a declaratory action. Exceptions, however, are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech,* 998 F.2d at 937. "There must, however, be sound reason that would make it unjust or inefficient to continue the first-filed action." *Id.* "The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice must be evaluated to ensure the case receives attention in the most

appropriate forum." *Micron Tech.,* 518 F.3d at 905.

An examination of the convenience factors in this case reveals that the Southern District of Iowa is the more appropriate forum for this dispute. Horton Archery argues that its employees, the "manufacturing witnesses," are located in the Northern District of Ohio, along with documents and records from the company. While this is surely true, any convenience benefit to Horton Archery would be equaled by the inconvenience to Defendants, whose witnesses and records are located in Iowa. Moreover, the patent was invented in Iowa, and the marketing and sale of the allegedly infringing products occurred in that state. Furthermore, the resolution of the Iowa litigation, which includes several tort claims along with the claim for patent infringement, will necessarily address each issue presented to this Court, while the converse is not true. If this case proceeded to judgment, the outstanding claims in Iowa would still need to be resolved, and needlessly duplicative litigation is a highly inefficient result that is not in the best interests of justice. Furthermore, this case is highly atypical of most first-to-file issues in that the substantive infringement action was filed before the declaratory relief action. *Cf. Micron Tech,* 518 F.3d at 900 (declaratory relief action filed the day before infringement action). Therefore, the Court concludes that there is no "sound reason that would make it unjust or inefficient to continue the first-filed action" and declines to use its discretion to do so.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. This action is dismissed.

IT IS SO ORDERED.

---------

Notes:

[1] WildComm-Horton Partners, LLC acquired Horton Manufacturing's assets on June 12, 2009. (Doc. No. 14-5; Doc. No. 15-2 at ¶ 5.) On June 17, 2009, WildComm-Horton Partners filed a certificate of amendment of certificate of formation with the Delaware Secretary of State Division of Corporations legally changing its name to Horton Archery, LLC. (Doc. No. 15-5.)

[2] Finding Horton Archery's motion to file a sur-reply well-taken, said motion is GRANTED. Defendants' motion to strike is therefore DENIED. The arguments contained within the motion in rebuttal to the sur-reply, however, will be considered by the Court, as well.

---------

# Teledyne **Techs., Inc. v.** Harris **Corp.**

United States District Court for the Central District of California
July 1, 2011, Decided; July 1, 2011, Filed
Case No. CV 11-00139 DDP (AJWx)

**Reporter:** 2011 U.S. Dist. LEXIS 71370; 2011 WL 2605995

TELEDYNE TECHNOLOGIES INCORPORATED, a Delaware corporation, Plaintiff, v. HARRIS CORPORATION, a Delaware a corporation, Defendants.

**Subsequent History:** Motion denied by Teledyne Techs., Inc. v. Harris Corp., 2011 U.S. App. LEXIS 15929 (Fed. Cir., Aug. 1, 2011)

**Prior History:** Harris Corp. v. Fed. Express Corp., 2010 U.S. Dist. LEXIS 64488 (M.D. Fla., June 29, 2010)

**Counsel:** [*1] For Teledyne Technologies Incorporated, a Delaware corporation, Plaintiff: Bruce R Zisser, Frederick A Lorig, Joseph M Paunovich, Quinn Emanuel Urquhart and Sullivan LLP, Los Angeles, CA.

For Harris Corporation, a Delaware corporation, Defendant: Brian A E Smith, Henry Charles Bunsow, Dewey & LeBoeuf LLP, San Francisco, CA.

**Judges:** DEAN D. PREGERSON, United States District Judge.

**Opinion by:** DEAN D. PREGERSON

---

**Opinion**

---

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Presently before the court is Defendant Harris Corporation ("Harris")'s Motion to Dismiss or Transfer Venue. After reviewing the parties' moving papers and hearing oral argument, the court grants the motion and adopts the following order.

### I. Background

Harris, a resident of Florida, owns a patent portfolio related to "Ground Data Link," or "GDL" technology. GDL technology collects flight performance data from aircraft and transmits that information wirelessly to ground-based systems. GDL transmits flight information via an 802.11 "Wi-Fi" signal.

Plaintiff Teledyne Technologies Incorporated ("Tele-

dyne")'s principal place of business is in California. Teledyne developed a "Wireless GroundLink," or "WGL" system, which also transmits aircraft flight information to [*2] ground-based systems. Unlike Harris's GDL system, however, the Teledyne WGL system utilizes a GSM cellular telephone network to transmit information.

Harris licences its GDL patent portfolio to other companies, including Spirent Systems Wichita, Inc. ("Spirent",) a Teledyne subsidiary. Harris has engaged in prior litigation related to its GDL patents. In 2007, Harris brought a patent infringement action against Federal Express Corporation ("FedEx") in the Middle District of Florida. That action involved three of the four patents at issue in the instant case. After the Florida court issued claim construction rulings, a jury found that FedEx had infringed Harris's valid patents. The Florida court affirmed the finding of validity and denied FedEx's motion for judgment as a matter of law on November 17, 2010.

In August 2010, Harris solicited Teledyne and suggested that Teledyne acquire a license to the GDL technology. Teledyne indicated that it was reviewing the GDL patent portfolio, and requested extensions of time in which to respond to Harris. On November 30, 2010, the parties' representatives met in person in California. Harris indicated that it was ready to take the "next step" if the [*3] parties could not reach a licensing agreement.

The parties did not reach an agreement on November 30. On December 1, Teledyne representative Robert Schaefer ("Schaefer") wrote a letter, in which he expressed the belief that the meeting "was useful in advancing the ball towards the goal line." Schaefer pledged to "address the portfolio with all deliberate speed" and "to give your requests our focused attention[] before we get together again." On December 3, to facilitate Teledyne's review, Harris supplied claim charts and other documentation of Teledyne's alleged infringement of the GDL patents.

Teledyne did not respond to Harris's further inquiries. Instead, on January 5, 2011, Teledyne filed this declaratory relief action. Teledyne seeks a declaratory judgment that four of Harris's GDL patents are invalid and unenforceable, and that Teledyne has not infringed those pat-

2011 U.S. Dist. LEXIS 71370, *3

ents. [1] On February 3, 2011, Harris filed a patent infringement action against Teledyne in the Middle District of Florida. The Florida infringement patent concerns the same four patents at issue here, as well as two additional GDL-related patents. Harris now moves to dismiss Teledyne's first-filed declaratory judgment  [*4] action or, in the alternative, to transfer to the Middle District of Florida.

## II. Legal Standard

Federal Circuit law controls the question whether to decline jurisdiction over a declaratory action regarding patent rights in light of a later-filed action for patent infringement. *Electronics For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005). "In a case of actual controversy . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party . . . ." *28 U.S.C. § 2201(a)* (emphasis added). This court enjoys "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995); See also *Teva Pharmaceuticals USA, Inc. v. EISAI Co., Ltd.*, 620 F.3d 1341, 1348-49 (Fed. Cir. 2010).

Generally, the first-filed suit has priority. *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). "Exceptions,  [*5] however, are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech, Inc., v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). When sound reasons make it unjust or inefficient to proceed with the first -filed action, the general preference for the first-filed suit "should yield to the forum in which all interests are best served." Id. Relevant factors include the convenience and availability of witnesses, the possibility of consolidation with related cases, and whether a party anticipatorily filed a declaratory judgment action in an attempt to preempt an infringement action. Id.; *Coyle*, 394 F.3d at 1347-48.

## III. Discussion

Here, it would be inefficient and unjust to proceed with Teledyne's declaratory judgment action. The Middle District of Florida has, in the recently-concluded FedEx case, already issued claim construction rulings on three of the four patents at issue here. [2] The court recognizes that the issues in the FedEx action and the Teledyne infringement action currently pending in Florida are not identical. Unlike the FedEx system, Teledyne's WGL system utilizes a GSM network, and Teledyne may present invalidity arguments  [*6] different from those

raised by FedEx. Nevertheless, having already conducted the FedEx proceedings, the Florida court is quite familiar with the patents at issue. Indeed, the Florida infringement action against Teledyne has already been transferred to the judge who presided over the FedEx matter. Accordingly, interests of expediency and efficiency militate against proceeding with the declaratory judgment action in this court.

Factors of convenience and availability of the parties also weigh in favor of dismissal. Harris's headquarters, research facilities, employees, and former employees are all located in Florida, as are certain non-party witnesses. Though Teledyne contends that its own witnesses and documents are located in this district, Teledyne's assertions of non-infringement represent only a portion of its claims. Teledyne also seeks a judgment that Harris's GDL patents are invalid and unenforceable. Resolution of those claims will necessarily involve significant examination of data and witnesses located in Florida.

Lastly, principles of justice weigh in favor of dismissal.  [*7] There is evidence that Teledyne filed this declaratory judgment action in anticipation of Harris's forthcoming infringement suit. As Teledyne's own papers illustrate, Harris "made it clear that if the parties could not reach an agreement, Harris was ready to take the 'next step.'" (Opp. at 6.) Harris "communicated to Teledyne in no uncertain terms that . . . Teledyne would be Harris' next litigation target." Id. Nevertheless, Teledyne continued to express interest in "advancing the ball towards the goal line" as it pledged to "keep in touch" in advance of subsequent meetings. Accordingly, Harris provided Teledyne with documentation of Teledyne's allegedly infringing uses. Teledyne responded by filing this declaratory judgment action, in anticipation of Harris's infringement action.

Contrary to Teledyne's assertions, this case is unlike either Genentech or Coyle. In Genentech, the district court dismissed a first-filed declaratory judgment action solely because an infringement action was filed one day later. *Genentech*, 998 F.2d at 938. The Federal Circuit reversed, holding that the mere existence of a later-filed infringement action cannot support dismissal unless "interests of justice  [*8] or convenience" are also implicated. Here, as described above and in contrast to Genentech, considerations of both convenience and justice are at stake, and support dismissal of the first-filed action.

Nor is this case factually similar to Coyle. In that case, the Federal Circuit reversed the dismissal of a declaratory judgment action because litigation threats by a patent holder created sufficient legal uncertainty to impli-

---

[1]   The patents-in-suit are U.S. Patent Numbers 6,047,165; 7,426,387; 7,426,288; and 7,428,412. The three latter patents are continuations of the '165 patent. All but the '388 patent were at issue in the FedEx action in Florida.

[2]   Though the FedEx matter is closed in the Middle District of Florida, an appeal to the Federal Circuit is pending.

2011 U.S. Dist. LEXIS 71370, *8

cate the Declaratory Judgment Act. *Coyle*, 394 F.3d at 1346 ("[T]he purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding it's legal rights." (quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 "(Fed. Cir. 1987)). As an initial matter, the facts of <u>Coyle</u> are distinguishable from those here. In <u>Coyle</u>, the patent holder, unrepresented by counsel, made several unsubstantiated threats of infringement litigation over the course of many years. *Id.* at 1343-44. Some of these threats were made before a patent ever issued, and, during certain periods, were made "on a daily basis." *Id.* at 1344. Here, in contrast to <u>Coyle</u>, there was no analogous uncertainty **[*9]** or risk of delay. By Teledyne's own admission, Harris "made it clear . . . that Teledyne would be Harris' next litigation target." (Opp. at 6).

Furthermore, the <u>Coyle</u> court acknowledged that "a district court may consider whether a party intended to preempt another's infringement suit when ruling on the dismissal of a declaratory action." *Coyle*, 394 F.3d at 1348. The <u>Coyle</u> court did not disagree with the district court's conclusion that the plaintiff filed a preemptive

suit, but rather opined that the anticipatory nature of a suit alone is not sufficient to warrant dismissal. <u>Id.</u> Here, as in *Serco Services Co., L.P. v. Kelley Co, Inc.*, 51 F.3d 1037 (Fed. Cir. 1995), the anticipatory nature of Teledyne's suit is but one factor in the dismissal analysis. Considerations of the convenience and availability of witnesses, the location of documents, judicial expediency and efficiency, and the preemptive nature of Teledyne's suit all merit dismissal of this declaratory judgment action.

## IV. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

Dated: July 1, 2011

/s/ Dean D. Pregerson

DEAN D. PREGERSON

United States District Judge

**CODONICS, INC., Plaintiff,**

**v.**

**DATCARD SYSTEMS, INC., Defendant.**

**No. 1:08-CV-1885**

**Resolving Doc. No. 11.**

**United States District Court, N.D. Ohio.**

**April 22, 2009.**

**OPINION & ORDER**

JAMES S. GWIN, District Judge.

Defendant DatCard Systems, Inc. ("DatCard") moves this Court to dismiss Plaintiff Codonics, Inc.'s Complaint for improper venue, 28 U.S.C. § 1406(a), or, alternatively, to transfer this action to the United States District Court for the Central District of California. [Doc. 11.] Plaintiff Codonics opposes. [Doc. 45.]

To decide whether this venue is appropriate, this Court must decide if "a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2), in the Northern District of Ohio. If venue is appropriate in the Northern District of Ohio, this Court must decide whether for the "convenience of the parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), this Court should transfer the action to the Central District of California.

Because DatCard has sold products in this district and because the brunt of the harm for the allegedly breaching activity has been felt in this district, this Court holds that venue is proper in this district. Because DatCard has failed to show that the relative convenience of Central District of California is sufficient to disturb Codonics's legitimate choice in a venue, this Court will not transfer this action. Accordingly, this Court DENIES Defendant DatCard's motion to dismiss or transfer.

I. Legal Standard for Adjudication of a Motion to Dismiss for Improper Venue or to Transfer Venue

When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *MedQuist MRC, Inc. v. Dayani,* 191 F.R.D. 125, 127 (N.D. Ohio 1999); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1352 (noting disagreement on which party bears the burden when a venue is challenged but concluding that placing the burden on the plaintiff "seems

correct").[1]

In resolving a Rule 12(b)(3) motion, a district court can consider materials outside the pleadings, but will generally accept all well-pleaded allegations as true unless the defendant's affidavits contradict those allegations. 5B WRIGHT & MILLER § 1352.

If a court holds that venue is proper and a defendant moves for a change in venue, the defendant bears the burden of showing that the convenience of the parties and witnesses "strongly favor transfer." 14D WRIGHT & MILLER § 3801.

Under these standards, this Court will describe the facts relevant to this motion.

II. Background Facts and Procedure

Plaintiff Codonics, Inc., headquartered in the Northern District of Ohio, and Defendant DatCard Systems, Inc., a California corporation, are "direct competitor[s]... in the medical imaging field." [Doc. 1-1 at 2-3.] Codonics sells both dry diagnostic medical imagers and CD/DVD disc publishers. [Doc. 1-1 at 2.] Codonics markets the CD/DVD disc publishers under the Virtua name. Codonics also provides film and media for use with its products. [Doc. 1-1 at 3.] Defendant DatCard sells a competing imager under the Smartline name and a competing CD/DVD medical image disc publisher under the PacsCube name. [Doc. 1-1 at 3-4.]

On January 18, 2008, DatCard filed a patent infringement action against Codonics in the United States District Court, Central District of California saying that Codonics's Virtua CD/DVD disc publishers infringed DatCard's patent No. 7,302,164 (the "164 patent"). [Doc. 14-2, Ex. A.] The 164 patent is titled "System and Method for Producing medical Image Data Onto Portable Digital Recording Media." [Doc. 14-2, Ex. A at 3.] In response to the infringement claim, Codonics filed a request for reexamination of the 164 patent in the United States Patent and Trademark Office. [Doc. 48-18, Ex. 17 at 3-4.] On January 30, 2009, the USPTO granted Codonics's request for reexamination. [Doc. 48-18, Ex. 17 at 3-4.] The district court in California has stayed that litigation pending the resolution of the reexamination. [Doc. 48-18, Ex. 17 at 3-4.]

Around six and one half months after DatCard sued Codonics for patent infringement in California, on August 6, 2008, Codonics sued DatCard in this Court saying DatCard falsely advertised its PacsCube and Smartline products in violation of the Lanham Act, 28 U.S.C. § 1125(a)(1)(B).[2] [Doc. 1-1.] Codonics says that DatCard advertises its PacsCube and Smartline products "as being particularly suited for medical applications." [Doc. 1-1 at 3.] According to Codonics, however,

DatCard's products are not suitable for use in the medical field because both lines of products include component parts that "can cause harm to patients in medical facilities." [Doc. 1-1 at 5.]

Relevant to its choice of a venue, in its Complaint, Codonics says that "DatCard's assertions in marketing [its products] have deceived... a substantial segment of its consumers... and such deception has influenced or is likely to influence consumers' purchasing decisions." [Doc. 1-1 at 6.] Because of this deception in marketing, "Codonics' existing customers... are replacing Codonics' products with DatCard's competing products." [Doc. 1-1 at 6.] Codonics sought discovery to prove these allegations as they relate to the Northern District of Ohio.

In discovery, Codonics found that DatCard had several connections with this district. First, at least one sales employee had visited customers in this district exchanged emails with customers in this district. [Doc. 45 at 9-10.] Second, DatCard had sent mass mailings advertising to hospitals in Ohio, which included hospitals in this district. Third, DatCard had maintained a website advertising its products that was accessible from this district. [Doc. 45 at 11-12.] Fourth, DatCard had "delivered one PacsCube system to an existing customer in January, 2008," [Doc. 11 at 2,] and had made other sales in this district before that time. [Doc. 45 at 9-10.] Fifth, DatCard has had contact with Ohio customers to provide technical support and warranty services. [Doc. 45 at 10.]

DatCard moved to dismiss this case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 or, alternatively, to transfer this case to the Central District of California under 28 U.S.C. § 1404(a). [Doc. 11.] This Court will address each argument in turn.

### III. Motion to Dismiss for Improper Venue

Under 28 U.S.C. § 1406(a), if a plaintiff files a case in the wrong venue, the district court "shall dismiss" the case. 28 U.S.C. § 1406(a); *see also* FED. R. CIV. P. 12(b)(3). Under the general venue statute, 28 U.S.C. § 1391(b),

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). In responding to the motion to dismiss, Codonics says that venue is proper under subpart (2) because "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of Ohio.[3]

In deciding whether a plaintiff's chosen venue is appropriate under § 1391(b), district courts must decide whether the district has a "substantial connection." *See* First of Michigan Corp. v. Bramlet, 141 F.3d 260, 264 (6th Cir. 1998). The district court, however, need not compare the connection of its district to the connection of other districts or decide what district has the most substantial connection. *See id.* Generally, "most courts are quite lenient in finding that a substantial part of the events occurs in a district." 14D WRIGHT & MILLER § 3806.1.

In deciding whether a district has a substantial connection to a trademark infringement action, courts have held that "venue may be proper in each jurisdiction where infringement is properly alleged to have occurred. At a minimum, the defendant must have targeted its marketing and advertising efforts at the district in question *or have actually sold its products there.* " *Metropolitan Opera Ass'n, Inc. v. Naxos of Am., Inc.,* No. 98 Civ. 7858 (DAB), 2000 WL 987265, *3 (S.D.N.Y. July 18, 2000) (emphasis added). Courts also consider "whether sales occur [in the district], and whether the defendant actively targeted the district for advertising or other sales-related purposes...." 14D WRIGHT & MILLER § 3806.1. In deciding venue in tort actions, courts also look to "where the harms were felt," but "the suffering of economic harm within a district is not sufficient without more...." 14D WRIGHT & MILLER § 3806.1.

Here, Codonics has alleged (and has pointed to discovery supporting) sufficient facts to justify venue in the Northern District of Ohio. Codonics has felt the economic harm of DatCard's allegedly breaching activity in its headquarters in this district. DatCard has made sales in this district, and the allegedly false advertising materials from the website were available in this district.

In moving for dismissal, DatCard notes it did not place the offending language that Codonics notes in its Complaint on the website until "sometime in late 2007 or early 2008." [Doc. 11 at 5.] DatCard suggests that this Court should, therefore, only look to DatCard's contact with this district that occurred after 2007 or 2008.[4] This argument, however, unduly narrows Codonics's claims. In its Complaint, Codonics says that DatCard's "marketing material" contains false statements and uses the online material as an "example." [Doc. 1-1 at 3.] Additionally, even DatCard admits that it may have made sales in this district after it posted the allegedly false advertising materials on its website. [Doc. 20-1 at 2 ("It cannot be determined whether the purchase order for the system was generated before or after the purportedly offending materials were placed on the website.").]

Codonics has not shown that DatCard has made

most (or even many) of the sales based on the allegedly false marketing material in this district. But § 1391(b) and Rule 12(b)(3) do not require such a showing to survive a motion to dismiss for improper venue. Instead, Codonics must show that "a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b), in this district. Codonics has made this showing. Accordingly, this Court DENIES DatCard's motion to dismiss for improper venue.

### IV. Motion to Transfer Venue

"[I]f venue is proper, a plaintiff's choice of forum is given substantial weight." 14D WRIGHT & MILLER § 3801. Under 28 U.S.C. § 1404(a), however, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When ruling on a motion to transfer pursuant to 28 U.S.C. § 1404(a), this Court will consider the following factors:

(1) The convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*McCuiston v. Hoffa,* 313 F.Supp.2d 710, 719 (E.D. Mich. 2004). This Court will not transfer unless convenience and the interests of justice "strongly favor transfer." 14D WRIGHT & MILLER § 3801.

In opposing transfer, Codonics notes that (1) it is headquartered in this district, (2) many potential witnesses that have purchased DatCard's products are located in Ohio, and (3) witnesses related to the suitability of DatCard's products for medical uses are spread throughout the country. [Doc. 45 at 20.]

In moving for transfer, DatCard (1) points to the currently stayed patent infringement litigation in California, and (2) says that materials and witnesses related to the allegedly infringing advertising are located in California. [Doc. 11 at 13-14.] These two reasons are insufficient to disturb Codonics's choice of a district.

First, in assessing the propriety of a transfer, the Supreme Court has noted the efficiency of trying separate claims in a single district when "both claims [are] between the same parties, and relate to the same incident." *Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 20-21 (1960) (internal quotations omitted). But the false advertising claims and the patent infringement claims, although involving the same parties, do not involve the same incident or incidents.

Second, only part of the relevant materials and witnesses are located in California. [Doc. 11 at 14-15.]

DatCard's witnesses and writings related to the marketing are likely in California, but other witnesses are more spread out. Purchasing witnesses are located in this district and others. While DatCard has pointed to an affidavit saying that "sales have been made to companies within the Central District of California," DatCard has brought forth no evidence suggesting that the sales in California are substantially outnumber the sales in this district. [Doc. 13.] DatCard has shown support for its argument that it would be more convenient of it to litigate this claim in California, but this showing is not enough to justify transfer.

As noted above, when venue is proper, a district court should give weight to a plaintiff's choice in a venue. Here, DatCard has failed to justify disturbing Codonics's choice in a venue. Accordingly, this Court DENIES DatCard's motion to transfer venue.

### V. Conclusion

For the reasons stated above, this Court DENIES Defendant DatCard's motion to dismiss or transfer.

IT IS SO ORDERED.

---------

Notes:

[1] *But see* 2-12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.32 (noting that, when a district court's venue decision turns on a factual issue, the defendant should bear the burden of proof because venue is an affirmative defense).

[2] In its complaint, Codonics also claims that DatCard's conduct constitutes (1) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), (2) deceptive trade under Ohio Revised Code §§ 4165.01-.04, and (3) unfair competition under Ohio common law. [Doc. 1-1 at 8-9.]

[3] Codonics also argued that venue was proper under subpart (1). Section 1391(c) says that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Codonics says that, under the above described facts, DatCard is subject to personal jurisdiction in the Northern District of Ohio. Because this Court holds below that venue is proper under subpart (2), this Court need not address this argument.

[4] DatCard also relies on the statute of limitations in Lanham Act claims to limit the scope of this Court's review. DatCard has not yet answered the Complaint, and this Court will not rely on DatCard's intention to make this defense in deciding this motion.

---------