UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **FOUNDATIONS WORLDWIDE, INC.,** ) | **CASE NO.1:13CV506** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | |
| ) | |
| **OLIVER & TATE ENTERPRISES,** ) | **OPINION AND ORDER** |
| **INC.,** ) | |
| ) | |
| Defendant. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3). In the alternative, Defendant requests that the Court transfer the case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).

### I. BACKGROUND

Defendant, Oliver & Tate Enterprises, Inc. ("COVERPLAY"), is a California corporation that produces slip covers for portable children's play yards. Plaintiff, Foundations Worldwide, Inc. ("Foundations"), is an Ohio corporation that supplies cribs and play yards nationwide. Starting in 2009, the two corporations began discussing the possibility

of entering into a business relationship together in which COVERPLAY would license some patented products to Foundations.  Negotiations ended abruptly when COVERPLAY refused to agree to terms provided by Joseph A. Lawlor, President of Foundations.  Subsequently, on April 22, 2010, Foundations sent letters to COVERPLAY's customers, hotels, and distributors, criticizing the safety of slipcovers such as those produced by COVERPLAY.  On August 9, 2011, letters were again sent by Foundations to customers of COVERPLAY which repeated the safety criticisms and requested the customers advocate to COVERPLAY to enter into a licensing agreement with Foundations.

In February 2013, COVERPLAY discovered products being promoted on Foundations' website that they believe infringe on two of COVERPLAY's patents, U.S. Patent No. 7,401,366 and U.S. Patent No. D572,961.  On February 22, 2013, COVERPLAY sent a Cease and Desist Letter, through email and U.S. Mail, to Lawlor.  (Hankin Decl., Ex. A).  The letter stated COVERPLAY'S intention to take the matter to court, if there was no response by March 4, 2013, on allegations that mirror the nine counts in the Complaint (ECF DKT # 1).  *Id.*  Foundations maintains that they did not receive the letter until February 28, and that they did not receive an email at all.  Lisa Haid, Foundations' Compliance Specialist, finally replied via email to the Cease and Desist Letter on March 5, the day after the deadline.  (Hankin Decl., Ex. B).  Haid requested an additional fourteen days to respond and expressed her belief that the matter could be handled amicably.  Marc Hankin, counsel for COVERPLAY, replied that same day and agreed to extend the deadline until noon on Friday, March 8, to allow an opportunity to resolve the matter amicably, despite the passing of the original deadline.  If there were no proposal to remedy the situation from Foundations,

Hankin stated that he would file the Complaint in Federal Court on Friday afternoon. (*Id.*, Ex. C).

On the morning of March 6, Haid again requested an extension, this time through March 13, to respond. In her letter, Haid assured Hankin that Foundations was desirous of resolving the matter quickly, *without any legal action*. (Hankin Decl., Ex. D). Hankin replied later in the morning, rejecting an extension and informing Haid that he had been authorized to draft a Complaint on Monday, March 4, after Foundations failed to respond by the deadline. Hankin explained that his clients were reviewing the Complaint at that moment and had instructed Hankin to file it at 12:01pm on Friday, March 8, unless Foundations ceased its "tortious behavior." (*Id.*, Ex. E). In the late afternoon, Haid sent one final email, explaining that she was pushing legal counsel "as hard as possible," but that the issues were "all new to them." (*Id.*, Ex. F). She claimed that legal counsel had other things to plan around, such as court, a fact that, in their Memorandum, COVERPLAY seems to believe was not true, and which Foundations has offered no evidence in support of and have not denied COVERPLAY's assertion. *Id.* Nonetheless, Haid promised that Foundations' counsel would be in touch by Friday. *Id.*

The very next day, on March 7, Foundations filed a Complaint for the present action, seeking declaratory judgment on nine counts which mirror the allegations COVERPLAY made in their Cease and Desist Letter. (ECF DKT # 1) (later amended in ECF DKT # 9). Despite this, Foundations did not inform COVERPLAY of the filing of the Complaint until the next day on March 8. Upon this news, COVERPLAY filed a Complaint in the Central District of California on claims that mirror those in the present action against Foundations and

Lawlor.  COVERPLAY has identified eleven non-party witnesses in California which have knowledge of the letters from Foundations and/or the products in dispute.  (Costa Decl. at ¶ 11-14).  Foundations has identified three witnesses, including two independent contractors it worked with and one former employee.  A Motion to Dismiss or Transfer by Foundations and Lawlor was denied after the Central District of California held that the declaratory action here in Ohio was an anticipatory suit and that the first-filed rule should not apply.  *Oliver & Tate Enterprises, Inc., d/b/a Coverplay v. Foundations Worldwide, Inc., et al.*, Case No. 2:13-cv-01683, ECF 27 (C.D. Cal. June 18, 2013).

On May 2, COVERPLAY filed a Motion to Dismiss or Transfer.

## II. LEGAL STANDARD

COVERPLAY has moved to dismiss Foundations' Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(3).  In the alternative, COVERPLAY requests that the Court transfer the case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).  Because the Court dismisses the case under Rule 12(b)(1), the 12(b)(3) motion and the transfer request will not be addressed.

"A motion to dismiss in a declaratory judgment action is considered a factual attack on subject matter jurisdiction."  *Google, Inc. v. EMSAT Advanced Geo-Location Tech., LLC*, No. 4:09CV1243, 2010 WL 55685, *2 (N.D. Ohio Jan. 4, 2010) (citing *3D Sys. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 804 (E.D. Mich. 2008)).  On such a motion, the Court does not need to presume the truthfulness of the pleadings.  *Google*, 2010 WL 55685, at *1; see also *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F. 3d 1125, 1134-1135 (6th Cir. 1996).  "In reviewing such motions, a district court has wide discretion to allow affidavits

[and] documents [. . . .]" *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F. 2d 320, 325 (6th Cir. 1990)). The Declaratory Judgment Act is not an independent basis of subject matter jurisdiction, but rather is a remedial statute. See *Toledo v. Jackson*, 485 F. 3d 836, 839 (6th Cir. 2007). Instead, subject matter jurisdiction is claimed under 28 U.S.C. § 1331 and 1338(a). (ECF DKT # 9).

### III. LAW AND ANALYSIS

With a coercive action moving ahead in the Central District of California, COVERPLAY seeks the dismissal or transfer of the present declaratory judgment action. Under the Declaratory Judgment Act, "any court of the United States, upon filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The Declaratory Judgment Act allows the Court to exercise jurisdiction over a declaratory judgment action, but the Court is not required to do so. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). "There must be well-founded reasons for declining to entertain a declaratory judgment action." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). The Sixth Circuit adopted a five-factor test in *Grand Trunk Western R. Co. v. Consolidated Rail Corp.* to determine the appropriateness of exercising jurisdiction over declaratory actions. 746 F. 3d 323 326 (6th Cir. 1984). The Court will also consider the first-filed rule because of a coercive suit between the same parties on the same facts and issues in the Central District of California. For the following reasons, the Court dismisses the declaratory judgment action.

**A. The Five-Factor Test Cautions Against Exercising Jurisdiction Over the Declaratory Judgment Action**

Whether the exercise of jurisdiction over a declaratory judgment is appropriate depends upon the application of five factors to the facts of the case. *AmSouth Bank v. Dale*, 386 F. 3d 763, 785 (6th Cir. 2004) (citing *Scottsdale Ins. Co. v. Roumph*, 211 F. 3d 964, 968 (6th Cir. 2000)).  These factors are:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Id.*  A party's intention to preempt another's patent infringement suit may be considered in ruling on a dismissal of a declaratory action, but a court must also consider other factors. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F. 3d 897, 904 (Fed. Cir. 2008).  "The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action." *Id.*

The first factor, whether a judgment would settle the controversy, does not weigh in favor of dismissal.  The Complaints in both this present declaratory action and the coercive action filed in the Central District of California each contain nine counts that mirror one another.  A judgment in the declaratory action would settle the controversy.  The usefulness

of this declaratory action, however, does weigh in favor of dismissal.  "[D]eclaratory judgments do not serve a useful purpose where there is a pending coercive action, filed by the natural plaintiff, which encompasses all of the same issues as the declaratory judgment action."  *Google,* 2006 WL 1281654, *4 (internal quotation marks omitted) (citing *AmSouth Bank*, 386 F. 3d at 787); see also *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F. 2d 746, 749 (7th Cir. 1987).  With a coercive action filed in California by Defendant, COVERPLAY, the natural plaintiff, the declaratory action serves no purpose, especially considering that harm has already occurred in addition to potential future harms.  See *Id.*; *Global Mfg. Assocs., Inc. v. Avery Outdoors, Inc.*, No. 1:07 CV 1006, 2008 WL 269088, *3 (N.D. Ohio Jan. 29, 2008) (declaratory actions are useful in clarifying legal duties in the future, rather than past harms).  COVERPLAY also seeks redress for past harms in their California suit, which a declaratory judgment would not be able to provide.

This declaratory action was procedural fencing.  When a declaratory action is filed mere days before a coercive suit by the natural plaintiff, Courts must be cautious for fear of encouraging "races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit."  *AmSouth Bank*, 386 F. 3d at 788.  This would allow alleged infringers to "rob" natural plaintiffs of their ability to choose their forum.  *Internet Transaction Solutions, Inc. v. Intel Corp.*, No. 2:06-CV-035, 2006 WL 1281654 (S.D. Ohio May 8, 2006) (quoting *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 909 (N.D. Ill. 1998)).  Foundations was notified, at the latest, on February 28, 2013 of COVERPLAY's intention to file suit if no agreement was reached by March 4, 2013.  Yet, through a series of delay tactics which will be

discussed below, Foundations managed to buy themselves enough time to file their own Complaint to secure their preferred forum. Foundations' deception and actions show procedural fencing, a conclusion which weighs in favor of the present action's dismissal.

The fourth factor, whether this declaratory action would cause friction between the state and federal courts, is a non-factor in this case. There is no state court involvement. While some claims are based on California state law, both cases are in federal district courts.

The fifth factor, whether there is a more effective alternative remedy, weighs heavily in favor of dismissal. The question in these circumstances is not the order in which the actions were filed, but which action will better serve the needs and convenience of the parties. *Id.* at *8. Generally, there is a "presumption that the first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." *Int'l Union, UAQ v. Dana Corp.*, No. 33:99CV7603, 1999 U.S. Dist. LEXIS 22525, *17-18 (N.D. Ohio Dec. 6, 1999). This presumption is bolstered by the fact that in the coercive action, COVERPLAY is seeking redress, which cannot be accomplished, if necessary, in this action. The more effective remedy is the coercive action in California.

With an alternative remedy, no usefulness of the present action, and Foundation's procedural fencing in the declaratory action, the application of the five-factor test supports the conclusion that the present action should be dismissed.

**B. The First-Filed Rule Should Not Be Applied**

Foundations argues that the first-filed rule should prevent dismissal of the present action, as it was filed the day before COVERPLAY's coercive action in California. "The general rule applicable when duplicative lawsuits are pending in separate federal courts is that

the entire action should be decided by the court in which an action was first filed." *Valley Enters. of Ohio, LLC v. Gainey Transp. Servs.*, 1:08 CV 1605, 2008 WL 4279601, *1 (N.D. Ohio Sept. 16, 2008). District courts have discretion to dispense with the first-filed rule in certain circumstances. *Smithers-Oasis Co. v. Clifford Sales and Mktg.*, 194 F. Supp. 2d 685, 687 (N.D. Ohio 2002). Extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping are all among the factors that weigh against the application of the first-filed rule. See *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F. 3d 535, 551-552 (6th Cir. 2007).

Foundations' behavior between February 28 and March 8, 2013, shows inequitable conduct. See *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 Fed. Appx. 433, 438 (6th Cir. 2001) (dismissal of declaratory action was proper when Plaintiff filed declaratory action the day before the negotiation extension period granted to them expired). While *Zide Sport Shop* also involved a Plaintiff sending a letter on the expiration date that did not inform the Defendant of the filed declaratory action to further delay the natural plaintiff, other circumstances in the present case also warrant a dismissal in spite of the first-filed rule. The Complaint filed on March 7 (ECF DKT #1), contains counts that exactly mirror those that COVERPLAY stated would be made in a coercive action if Foundations did not respond in time. (Hankin Decl., Ex. A). Further, despite Foundations' insistence otherwise, there is evidence an email was sent to Foundations on February 22. See *Id. But see* Lawlor Decl. ¶ 21. Even if not, they were aware, by February 28, and still failed to respond by the original deadline. In that response on March 5, they requested an additional fourteen days "to provide an appropriate response." (Hankin Decl., Ex. B). On March 6, they again requested more

time, an additional week. (Hanken Decl., Ex. E). Through all three attempts at delays, they were aware of COVERPLAY's original intention to file a coercive suit on March 5, and after pleading for more time, on the extended deadline of March 8. Foundations knew the only reason it was pushed back was because of COVERPLAY's hopes of settling the dispute out of court. *Id.* Despite Foundations' constant pleas that they did not have enough time to review the situation and make a proposal, which they promised to COVERPLAY by March 8, Foundations instead appeared to have spent their time drafting a complaint to steal from the natural plaintiff the benefit of selecting a forum. This is particularly troublesome when, in Haid's email on the morning of March 6, Foundations assured COVERPLAY that it was "desirous of resolving [the dispute] as quickly as possible and doing so *without any legal action*." (Hankin Decl., Ex. D) (emphasis added). When Foundations decided to draft that complaint and refrain from a settlement, they knew that they could only do so with the benefit of the first-filed rule because they had delayed COVERPLAY from filing through the promises of working things out "amicably."

Considerations of expediency and efficiency must also weigh in. See *Genentech v. Eli Lilly & Co.*, 998 F. 2d 931, 937 (Fed. Cir. 2005) (overruled on other grounds by *Wilton*, 515 U.S. 277); *Teledyne Techs., Inc. v. Harris Corp.*, No. CV 11-00139 DDP, 2011 WL 2605995, at *2 (July 1, 2011, C.D. Cal.). Regardless that the coercive action is moving forward in the Central District of California, despite Foundation's failed Motion to Dismiss on the first-filed rule, the dismissal of the present declaratory action would be efficient. The bulk of non-party witnesses identified are in California. Foundations' inequitable conduct leading up to an anticipatory suit, coupled with considerations of efficiency, convince the Court to refrain

from applying the first-filed rule.

Foundations cites to *Elecs. for Imaging, Inc. v. Coyle* to argue that Federal Circuit law applies on this matter instead of Sixth Circuit law, and that COVERPLAY must show more than just an anticipatory nature of the suit. 394 F. 3d 1341 (Fed. Cir. 2005). A review of similar cases shows that Sixth Circuit law applies to the question of whether to dismiss a declaratory action. See, e.g., *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934 (E.D. Ten. 2006); *Holley Performance Prods., Inc. v. Quick Fuel Tech., Inc.*, 624 F. Supp. 2d 610 (W.D. Ken. 2008); *Internet Transaction Solutions*, 2006 WL 1281654. Even if Federal Circuit law applies in determining whether to accept a declaratory action, the case for dismissal is even stronger. Factors to consider in a motion for dismissal of a declaratory action in an infringement suit include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest," in addition to whether the declaratory action was an improper anticipatory suit. *Electronics for Imaging*, 394 F. 3d at 1347-1348. Federal Circuit case law shows that the first-filed rule is not automatic and that exceptions are made when justice or expediency requires, which is not rare. *Genentech*, 998 F. 3d at 937.

For all the above-mentioned reasons related to Foundations' inequitable conduct, the application of the first-filed rule would be unjust, warranting a discretionary decision not to apply the rule. See *Id.* In addition to that, factors of convenience and availability of witnesses weigh heavily in favor of dismissal. COVERPLAY has identified eleven non-party witnesses in California, in addition to its owners. Foundations has only identified three

-11-

witnesses, two of which were independent contractors for Foundations and one of which is a former employee. Further, there is the real possibility of consolidation with related litigation, as the California action based on all the same events is moving forward after the Central District of California's denied Foundation's Motion to Dismiss or Transfer to this Court.

Because the Court's analysis supports dismissing the case, the Court need not address COVERPLAY's alternative Motion to Transfer the case to the Central District of California.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS COVERPLAY's Motion to Dismiss Foundations' Complaint. This dismissal is without prejudice.

IT IS SO ORDERED.

<u>s/ Christopher A. Boyko</u>
CHRISTOPHER A. BOYKO
United States District Judge

Dated: August 12, 2013